## BROWNING v. WABASH WESTERN RAILWAY COMPANY, Appellant.

### In Banc, July 9, 1894.

1. **Negligence:** RAILROAD: INJURY TO SERVANT. Plaintiff's husband, a locomotive engineer, while on duty, was killed by a collision with some loose freight cars which escaped from a side track, in circumstances described in the opinion, which, it is *held*, tend to show negligence of defendant in removing the brake-staffs from certain of the cars, and negligence in other particulars.

124 55
124 105

124 55
61a 588

124 55
64a 288

124 55
136 670
70a 187

124 55
71a 630

124 55
142 555
142 666
75a 588

124 55
152 393

124 55
102a 7585

Browning v. Railway Co.

2. ——: ——: ——: MASTER'S DUTY: FELLOW SERVANTS. It is the personal duty of an employer to use ordinary care that the machinery necessary to conduct his business is maintained in a reasonably safe condition for use. The delegation of that duty to subordinates does not bring the latter into the relation of fellow servants, within the rule of exemption of the master from liability, as to employees injured by reason of a breach of that duty.

3. ——: ——: ——: ——. The master must use reasonable care not to subject his employee to an extraordinary risk in the service, unknown to the employee.

4. ——: ——: ——: ——: FELLOW SERVANT. When an employee sustains injury by the combined negligence of a fellow servant and of the master, the latter can not, on that ground alone, avoid liability.

5. ——: ——: ——: CAUSAL CONNECTION. Where an injury may be reasonably ascribed to a negligent act as a moving cause, the intervention of another negligent agent, precipitating the calamity, will not be held to break the causal connection between the negligence and the damage, where the later intervening act was induced by the first act of negligence, and was designed to avert its consequences.

6. ——: ——: DEATH ACTION: STATUTE: DAMAGES: INSTRUCTION. In an action by a widow, under section 4427 (R. S. 1889), for the death of her husband, an instruction to assess her damages at such sum as would be "a fair and just compensation to her for the loss of her husband, not exceeding $5,000," is not erroneous in its general scope; and, where no more definite instruction is asked by the losing party, it does not constitute reversible error.

7. Practice: INSTRUCTIONS. The trial court is not required in a civil case to instruct, of its own motion, on all questions of law involved.

*Appeal from Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

AFFIRMED.

*F. W. Lehmann* and *Geo. S. Grover* for appellant.

(1) The mere fact that the brake-staffs were removed from the nine cars of steel, did not make out a *prima facie* case of negligence against the defendant. *Bowen v. Railroad*, 95 Mo. 268; *Tabler v. Railroad*, 93

Mo'. 79; Wood on Master and Servant [2 Ed.], sec. 346; p. 708; *Randall v. Railroad*, 109 U. S. 478; *Railroad v. Hughes* (Pa.), 33 Am. and Eng. Railroad Cases, 348. (2) The removal of the brakes from the nine cars of steel was not the proximate cause of the injury. *Henry v. Railroad*, 76 Mo. 288; *Carter v. Towne*, 103 Mass. 507; *Lannen v. Gaslight Co.*, 44 N. Y. 459; *Matthews v. Elevator Co.*, 59 Mo. 474; *Mathiason v. Mayer*, 90 Mo. 585; *Moulton v. Sanford*, 51 Me. 134; *Sultan v. Wanwatosa*, 29 Wis. 21. (3) The death of Browning was due to the negligence of Nolan, the fellow servant of Browning, that negligence, consisting of, *first*, his failure to note whether the cars were all coupled together before backing against them with his engine, and, *second*, his act of throwing the stub switch and thus letting the moving cars out upon the main track. *Lewis v. Railroad*, 54 Mich. 55; Wharton on Negligence, sec. 155. (4) The jury were not properly instructed as to the measure of damages, but were left at liberty to award such damages as they chose within the maximum fixed by law. *Hawes v. Stock Yards Co.*, 103 Mo. 60; *McGowan v. Ore & Steel Co.*, 109 Mo. 518. (5) The court gave improper instructions at the request of plaintiff, and refused proper instructions asked by defendant. See authorities cited under points 1 to 4.

*A. H. Waller* for respondent.

(1) Browning, deceased, was entitled to a clear and unobstructed track, and appellant owed him this duty, and if the cars that collided with Browning's engine got upon and obstructed the track by reason of the negligence of any agent or agents of appellant entrusted with the superintending control and management of said cars, and acting in the master's stead,

appellant is liable therefor. *Wilson v. Railroad*, 15 Am. and Eng. Railroad Cases, 192; *Railroad v. Welch*, 52 Ill. 183; *Fifield v. Railroad*, 42 N. H. 225; *Dorsey v. Company*, 42 Wis. 583; *Lewis v. Railroad*, 59 Mo. 495. (2) The escaping of the cars loaded with steel and their flight down the grade and consequent collision with Browning's engine, were caused and occasioned by a series of negligent acts and omissions with reference to the management of said cars which conjoined and concurred together to that end, viz: *First.* The removal of the brake-staffs by road master McGuigan, which rendered the cars unmanageable if put in motion whilst detached from the engine or other cars having brakes. *Second.* Road master McGuigan's act in ordering said loaded cars so without brakes, and therefore unmanageable, to be set in on the side track at Bridgeton, the tracks at said point being on a grade or incline, whereby they became a source of danger. *Lilly v. Railroad*, 14 N. E. Rep. 503. *Third.* The act of conductor Nolan in turning the switch after the cars were in motion and unmanageable and a disaster of some sort inevitable, whereby they were allowed to escape onto the passing track and from thence onto the main track. (3) The evidence shows that road master McGuigan had charge of the division of the road extending from St. Louis to Moberly, and of the work train and the crew thereof whilst employed as such, and of the laborers and their foreman who loaded the cars with steel and directed them in their work and movements; he was, therefore, a vice-principal and his acts were the acts of appellant. *Hoke v. Railroad*, 88 Mo. 360; *Harrison v. Railroad*, 41 Am. and Eng. Railroad Cases, 398. (4) Conductor Nolan had charge of his train and the cars that escaped, and was responsible for the safe and proper management of the same and for the performance of duty on the part of the men

engaged with him and for the adjustment of the switches. In the discharge of these duties, he, too, was a vice-principal and his acts were the acts of appellant. *Whitehead v. Railroad*, 99 Mo. 271; *McGowan, v. Railroad*, 61 Mo. 528; *Moore v. Railroad*, 85 Mo. 588; *Railroad v. Ross*, 112 U. S. 377; *Ayres v. Railroad*, 33 Am. and Eng. Railroad Cases, 272; *Moon v. Railroad*, 17 Am. and Eng. Railroad Cases, 531; *Railroad v. Laustrom*, 21 Am. and Eng. Railroad Cases, 529. (5) Even though conductor Nolan be held to be a fellow servant, yet plaintiff, under the facts, is still entitled to recover, for the reason that Nolan's negligence at most merely concurred with the prior negligence of defendant's road master to cause the collision and Browning's death. In case the negligence of the master concurs with the negligence of a fellow servant to produce an injury, the plaintiff is, nevertheless, entitled to recover. 2 Thompson on Negligence, p. 981, and cases cited; *McDermott v. Railroad*, 87 Mo. 301; *Young v. Iron Co.* 103 Mo. 324; *Crutchfield v. Railroad*, 76 N. C. 320; *Booth v. Railroad*, 73 N. Y. 38; *Paulmeier v. Railroad*, 34 N. J. Law, 151. (6) Appellant's assignment of error, with reference to the giving and refusing of instructions other than the instruction on the measure of damages, is not entitled to consideration, for the reasons: *First.* That the court adopted, in the giving of instructions, the appellant's theory of the law. Appellant can not complain of error that it induced. *Second.* Because appellant's refused instructions did not correctly declare the law. *Price v. Breckenridge,* 92 Mo. 378; *Holmes v. Braidwood*, 82 Mo. 610; *Harrington v. Sedalia*, 98 Mo. 583. (7) Plaintiff's instruction on the measure of damages confined the jury to compensatory damages and was not misleading. If appellant regarded this instruction insufficient and misleading, as it now claims, it should have asked an

instruction of the court defining the measure of damages according to its view of the law; not having done so, it can not complain now; it can not take advantage of its *laches* or intentional omission to ask for such instruction in the appellate court. *Schultz v. Moon*, 33 Mo. App. 343; *Tetherow v. Railroad*, 98 Mo. 86; *LeMay v. Railroad*, 105 Mo. 361; *Railroad v. Clark*, 74 Ala. 443. (8) Even if the giving of this instruction was technically an error, appellant was not prejudiced thereby, because: *First.* From a review of the entire record the verdict was unquestionably for the right party, and the damages awarded, to wit, $4,000, in view of the evidence, were reasonable. Evidently the jury were not misled nor was the appellant prejudiced by the giving of said instruction. *Fortune v. Fife*, 105 Mo. 433; *Hanniford v. City of Kansas*, 103 Mo. 182; *Fairbanks v. Long*, 91 Mo. 628; *Barry v. Railroad*, 98 Mo. 62; *Andis v. Personett*, 108 Ind. 202; *Iron & Steel Co. v. Martin*, 2 W. Rep. 56; *Fitzgerald v. Barker*, 96 Mo. 661. *Second.* Because Browning's death was caused and occasioned by the neglect of appellant's agents (not fellow servants) in managing and operating appellant's cars. Respondent was therefore entitled to damages in the penal sum of $5,000 under the second section of the damage act. The giving of said instruction authorizing the jury to award a less amount was less favorable than plaintiff was entitled to and, therefore, not prejudicial to defendant. *Rine v. Railroad*, 100 Mo. 228; *Sullivan v. Railroad*, 97 Mo. 120. (9) In civil cases no exceptions can be taken in the supreme court except such as have been expressly decided by the trial court. R. S. 1889, sec. 2302; R. S. 1889, sec. 2085; 2 Thompson on Trials, p. 2087, sec. 2754; *Orr v. Rode*, 101 Mo. 399; *Bollinger v. Carrier*, 79 Mo. 318; *Light v. Railroad*, 89 Mo. 108; *Witte v. Quinn*, 38 Mo. App. 687; *Railroad v. Vivian*, 33 Mo. App. 589.

BARCLAY, J.—This is an action to recover statutory damages, on account of the death of plaintiff's husband, ascribable, as she charges, to negligence of defendant, in particulars which will appear later.

The pleadings need not be detailed. They made certain issues, hereafter shown, which were submitted for trial before Judge BURGESS and a jury.

Plaintiff is the widow of Joseph Browning, a locomotive engineer, who was killed while in defendant's service. At the time of his death he was twenty-eight years old, had always been in good health, and was earning, on an average, $150 per month.

Bridgeton is a station on the Wabash railroad, sixteen miles west of St. Louis. About one mile east of Bridgeton is Graham station. There is a depression in the railway between the two stations, somewhat nearer to Graham. The grade is a descending one from each of the stations to this point of depression.

At Bridgeton there are three tracks, the main track and two sidings. The two sidings are both south of the main track; the outer one is designated as the "house," or back track; the inner, as the passing track.

An automatic switch connects the passing and main tracks; and cars can move from the passing to the main track, the switch being set by the mere movement of the cars, while the house and passing tracks are connected by a stub switch—that is, one which is not set by the movement of the cars, but must be put in place by hand, before cars can pass over it from one track to the other.

On the thirteenth of July, 1888 (the day before the accident) conductor Nolan, by direction of the division road master, left eleven cars, loaded with steel rails, on the house track at Bridgeton. Some of these cars were twenty-eight feet long and some of them thirty; the

rails were thirty feet long. Previous to loading the cars, and because they were to be so loaded, the brake-staffs had been removed from them by order of the division road master under whose supervision the loading was done.

The brakes could not be used when the brake-staffs were off.

When the cars were put on the side track, they were made fast by blocks and obstructions under the wheels, as was the custom with cars having no brakes. There they remained safely until the following night.

On the fourteenth of July, conductor Nolan received an order from defendant's train dispatcher, directing him to go from Ferguson to Bridgeton, after the working hours of that day, and take these eleven cars from that place to Moberly. He left Ferguson with his work train, just ahead of the west-bound passenger train, number 27, of which plaintiff's husband was engineer.

Nolan knew that Browning's train was to follow close behind him, and, in the regular course of things, would reach Bridgeton but a few minutes after him.

When Nolan reached Bridgeton he left his caboose on the passing track, and, with the engine and train crew, set out to couple to the cars on the house track.

He says that when he left the cars of steel there, the day before, they were all coupled together; but he did not, nor did any of his crew, make examination to see if they were still coupled, before attempting to move them.

In addition to the cars of steel, there were some coal and box cars on the house track, of which one, a box car, was east of the steel cars and the remainder, west.

The engine was backed in at the west end of the house track, and coupled to the box and coal cars.

Then the engine, with the cars attached, was backed against the steel cars and coupled to the nearest of them. There was something of a shock incident to this. The steel cars were pushed backward. Nor did they all stop when the engine stopped and they had taken up the slack in the couplings. Nine of them continued their movement eastward, not being coupled to their fellows, and therefore not held by the engine. Slowly they began to run; but the grade was downward and their speed accelerated with each revolution of the wheels. Nolan and his men tried to stop them by throwing under the wheels such obstructions as they found at hand, but to no purpose.

Just east of these cars, on the same track, stood a box car, loaded with ties. As the cars of steel struck this, it, too, was set in motion. Left now to themselves these cars would have run down to the east end of the house track. There they must have stopped because they could go no further. Nothing more serious could then have ensued than the derailment of one, or possibly two, of these cars—a derailment that could not have seriously injured the cars, and that would have left the main track free for the passage of trains.

Instead of letting the cars thus bring themselves to a stop, Nolan threw the stub switch and so opened a clear way for the cars to the passing track, thence through the automatic switch to the main track, and along the latter over a descending grade towards Graham station.

Nolan, in explanation of this act, says: "I did it, as I supposed the cars would be stopped before they got on the main track, and therefore I threw the stub switch; if I had not turned that, the cars would have run off the track, and would not have got on the passing or main track; but I supposed we had them under control and they would be stopped."

Browning was a few minutes late. His train had the right of way.

No sooner had Nolan's cars passed out upon the main track, than Browning's train showed its headlight at the west end of the Graham switch.

One of Nolan's brakemen mounted the box car and endeavored to set the brake; but it could not, and did not, hold against the great weight crowding down upon it.

The train from the east and the truant cars from the west were now moving upon each other, and each upon a down grade at the rate of twenty and eighteen miles an hour respectively.

It was a starlight night, about 9:30 o'clock. There was no moon. The catastrophe occurred in a few moments after the wild cars became visible from Browning's engine as they came within range of its headlight.

The brakeman, Mr. J. W. Dunn, whose courage and fidelity to duty in that trying hour, demand a passing word of praise, stuck to his post, signaling with his lantern for the coming train {to stop, and continued to do so, without taking thought for his own safety, until within three car lengths of the point of collision, when he sprang off and escaped unhurt.

The two great moving masses met near the bottom of the incline and Browning was almost instantly killed in the wreck.

The foregoing facts appeared from the testimony of various witnesses on the part of plaintiff.

At the close of her case, defendant asked an instruction in the nature of a demurrer to the evidence, which the court refused.

Defendant offered no testimony.

The following instructions were given as indicated:

*For plaintiff*:

"1. If the jury believe from the evidence that the main and side tracks of the defendant's railroad at Bridgeton were, on July 13 and 14, 1888, on a grade that descended eastward, and that defendant's division road master, at or about said first named date, negligently caused the brake-staffs to be taken off of nine or more flat cars, and the same to be loaded with iron or steel rails, and then set in upon said Bridgeton side track without any brakes set, or that could be set, or other reasonably safe means or appliances for securing them in their places, or for stopping them if put in motion, so that said cars could not be safely coupled up or handled and were liable to move or be easily put in motion and to escape onto defendant's other side or main track and obstruct the same, and that in direct consequence of said negligent acts of defendant's servants and agents (if they find them negligent) said cars did escape from said side track onto defendant's main line, and collided with train number 27, whereby Joseph Browning, plaintiff's husband, without any negligence on his part contributing thereto, was killed, then the jury will find for plaintiff."

"3. If the jury find for plaintiff, they will assess her damages at such sum as in their judgment will be a fair and just compensation to her for the loss of her husband, not exceeding the sum of $5,000."

*For defendant:*

"5. The jury is instructed that the only charge of negligence made in the petition against this defendant, which you are to consider, is concerning the removal of the brake-staffs from the flat cars, which were loaded with steel, and it devolves upon the plaintiff to prove that the removal of said brake-staffs was an act of negligence. The jury can not presume that it was a negligent act from the fact, if it be a fact, that the cars

VOL. 124—5

escaped from the side track onto the main track, and there collided with Browning's train.''

The court also gave two other instructions asked for defendant, with certain slight modifications, namely, after striking out of that marked (A) the words which we indicate by placing them in brackets; and by adding to that marked (B) the words which we have italicized, viz:

''(A) If the jury believe from the evidence that Browning's death was caused [in any degree] directly by failing to recognize the signals to stop, if any were given, and to stop or check the speed of his train in response thereto, then your verdict must be for the defendant.''

''(B) The court instructs the jury that this defendant did not owe to the deceased Browning the legal duty to provide the flat cars, which it left standing upon the side track with brakes; and if you find from the evidence that the cars had no brakes at the time of the injury, this does not *of itself,* entitle the plaintiff to recover.''

The court refused the following requests for other instructions, viz.:

''3. If the jury believe from the evidence that the cars escaped from the side track, and collided with the engine upon which Browning was, by reason of the conduct of the train men attempting to couple onto them, then your verdict must be for the defendant.''

''4. If the jury believe from the evidence that Browning was killed in one of the risks to which he was exposed by his employment, then the plaintiff can not recover.''

The jury found in favor of the plaintiff, assessing her damages at the sum of $4,000.

After an unsuccessful motion for new trial and the

saving of exceptions necessary for a review, defendant took the pending appeal.

Several points are now pressed upon our notice as calling for a reversal of the judgment.

1. It is urged that proof of "the mere fact that the brake-staffs were removed from the nine cars of steel did not make out a *prima facie* case of negligence against the defendant."

To this we reply that the court did not so declare. It left it to the jury to say whether the removal of the brake-staffs and the heavy loading of the cars so equipped, were negligent acts. That they tended to prove negligence there can be no substantial doubt.

Dunn testified: "These cars were supplied with brakes at the time Nolan got them; at the time these steel rails were loaded they took the brake-staffs off; the brakes could not be worked or used after the brake-staffs were taken off."

It appeared further that they were removed by order of, and under the personal view of, the division road master. That officer certainly was no fellow servant of Browning in respect of that act. But, on the contrary, it appears that he was intrusted with the performance of the master's duty of supervising and controlling the machinery to whose defective condition the plaintiff ascribes the injury complained of.

It is part of the personal duty of the employer to use ordinary care that the machinery and appliances, necessary to the conduct of his business, are maintained in a reasonably safe condition for the purposes to which they are devoted in the prosecution of that business.

The removal of the brake-staffs left the cars in such a state that their movements could not be governed with the same facility, or by the same means or power, as before.

It is urged by defendant that this was but a necessary consequence of putting upon the cars the loads of rails they were to carry in the due course of the railroad business.

But to this it must be answered that the law imposed on defendant the duty of using reasonable care that the cars should not be so loaded as to create an extraordinary risk to its other employees who were not aware thereof.

We are of opinion that the use of cars so heavily loaded, in the vicinity of a steep grade, as at Bridgeton, without brakes to control their movements (in the circumstances exhibited by this case), justified the inference of negligence which the jury drew by their verdict. It tended to show a want of such ordinary care on the master's part as is above described, and furnished a meritorious foundation for the finding by the jury of negligence in that regard.

The delegation to subordinates of the duty of ordinary diligence, in respect of maintaining in a condition of reasonable safety the machinery used in the master's business, does not bring such subordinates and a co-employee, who may be injured by the failure to perform that duty, into such relation as to exempt the master from liability to the latter for negligence of those subordinates, under the rule appliable to fellow-servants in a common employment in this state. *Lewis v. Railroad* (1875), 59 Mo. 495.

2. But it is then insisted that "the removal of the brakes from the nine cars of steel was not the proximate cause of the injury."

The trial court did not announce the converse of that proposition; but the fact referred to was submitted (along with others) to the jury for a finding whether or not it had direct connection, as a cause, with the death of Browning. The jury answered the

question in the affirmative, and we consider that there was ample room for that inference.

That another element of causation (discussed in the next paragragh) may have entered into the result can be conceded; but that does not, necessarily, break the legal connection between the brakeless condition of the cars and the catastrophe which forms the basis of this action, as we shall endeavor to show further along.

3. Next, it is claimed that the death of Browning was due to negligence of Nolan, the conductor, in failing to see that the cars were safely coupled before causing the engine to back against them, and especially in throwing the stub switch after the cars began to move. The latter act cuts an important figure in the result as it permitted the cars to run out on the passing track, and in that way to the main track where the fatality occurred.

Defendant claims in that connection that Nolan must be regarded as the fellow servant of Browning and that there is hence no liability to plaintiff for Nolan's negligence.

It may be assumed, without now deciding, that those employees were fellow servants.

The case was not put to the jury upon the hypothesis of defendant's liability for any of the acts of Nolan just pointed out.

The acts set forth in the plaintiff's first instruction were those of the road master, who stood in the attitude of vice-principal toward all the employees mentioned. His acts in causing the removal of the brake-staffs, the heavy loading of the cars, and the placing of them on the side track at Bridgeton, are to be regarded as acts of the defendant for the purposes of this case. If, then, these acts were found to be the juridical or final cause of the death of plaintiff's husband, it would not matter

that some act of Nolan (regarding him now as a fellow servant of Browning) contributed to that result.

It must be considered as settled in Missouri (in accord with the generally accepted law elsewhere) that where an employee sustains injury in consequence of the combined negligence of the master and of some fellow workman, he will not, for that reason alone, be denied a recovery. *Young v. Shickle, etc., Co.* (1891), 103 Mo. 324.

But the influence of Nolan's act on the happening of the injury is important in another aspect. Did it break the causal connection between the defendant's negligence, attributed to the road master, and the death of plaintiff's husband?

To what extent the intervention of an independent actor will break the chain of causation between a given act and another fact, ascribed to it as a result, is a question of difficulty in many cases. In that now before us we shall not attempt to generalize on the subject.

The trial judge left it to the jury to say whether or not the intervention of Nolan's action interrupted the direct connection between the negligence of defendant and Browning's death. They found that it did not. If the evidence warranted such an inference as a reasonable deduction from the facts, then we have at present nothing further to do than to so declare.

Nolan did not "throw" or shift the switch, which allowed the cars to run out to the passing track, until the original negligent acts (in respect of the loading of the cars and removing the braking appliances) had begun to bear fruit. The cars had commenced to move and were gliding beyond control when he adopted the expedient of opening the switch, and thus giving, as he thought, more space and a better opportunity to check them without damage.

His act was itself thus induced by the original negligence, was designed to avert its consequences, and is proximately ascribable to it as a cause. *Davis v. Garrett* (1830), 6 Bing. 716.

His act may also be treated as negligent and as contributing to the final catastrophe, without necessarily relieving defendant from liability for the prior action of the road master.

The case as presented furnishes, in our opinion, sufficient grounds for the finding that all the events that followed defendant's acts of original negligence might reasonably have been anticipated as the natural and probable consequences thereof, by any person of ordinary foresight and prudence, acquainted with the facts and circumstances. We regard this as sufficiently clear to dispense with further discussion of it in view of precedents on the subject. *Clark v. Chambers* (1878), 3 L. R. App. Cas. 327; *Lowery v. Railroad* (1885), 99 N. Y. 158; *Lilly v. Railroad* (1887), 107 N. Y. 566; *St. Louis Bridge Co. v. Miller* (1891), 138 Ill. 465; *Gibney v. State* (1893), 137 N. Y. 1.

4. Touching the measure of damages, the following expression of opinion, prepared by my learned brother GANTT, is approved and adopted, namely:

"The instruction on the measure of damages is also assailed as error.

"The instruction was in these words: 'If the jury find for the plaintiff they will assess her damages at such sum as in their judgment will be a fair and just compensation to her for the loss of her husband, not exceeding the sum of $5,000.'

"The defendant asked no instruction on the measure of damages whatever. No attempt was made by it to point out the proper elements of damage in such cases or to modify the general language of the instruction.

Bank v. Wood.

"The instruction is not erroneous in its general scope; and if, in the opinion of counsel for defendant, it was likely to be misunderstood by the jury, it was the duty of the counsel to ask the modifications and explanations, in an instruction embodying its views.

"The court is not required in a civil case to instruct on all questions, whether suggested or not, and as there is nothing in the amount of the verdict to indicate that the jury were actuated by any improper motive in their assessment, the general nature of the instruction is no ground for reversal."

The judgment is accordingly affirmed. BLACK, C. J., BRACE, GANTT, MACFARLANE AND SHERWOOD, JJ., concur. Judge BURGESS, having tried the cause as circuit judge, did not take part.