## WHEELER v. BOWLES, Appellant.

Division Two, June 11, 1901.

1. **Malpractice**: DAMAGES: NON-DIRECTION. In a civil case, mere non-
direction is no ground for reversal. Where neither plaintiff nor
defendant submitted an instruction on the elements of damage in a
malpractice case, but simply said, "If you find her shoulder has been
permanently injured, lamed and disfigured," etc., it became defend-
ant's duty, if he desired the jury restricted to certain elements, to
have offered an appropriate instruction to that effect.

2. ———: ———: ELEMENTS STATED. An instruction, in a malpractice
case, which required the jury to find that defendant was employed
by plaintiff to set and heal her dislocated shoulder, and that he neg-
ligently treated it, and through his negligence the dislocation was
not reduced, and as a result plaintiff's shoulder had become perma-
nently injured, and then told them that in estimating her damages
they should not, as she was a married woman, include her loss of
time and services, and then left it to them to find the amount she
should recover, contains every necessary element of damage.

3. **Summoning Jury**: BROTHER OF COUNSEL. Where both sides re-
quested the sheriff to get a good jury, and he made out a list of twenty-
three men, and served twelve of them himself, and directed a deputy,
a brother of one of plaintiff's counsel to go after the other eleven,
charging him to serve no other persons if they could not be found,
and nothing appeared to indicate that he suggested anything im-
proper to any of them, the verdict will not be disturbed because a
part of the jury were served by this deputy.

Wheeler v. Bowles.

Appeal from Maries Circuit Court.—*Hon. C. D. Corum,*
Special Judge.

AFFIRMED.

*W. S. Pope, Wm. M. Barr* and *J. W. Terrill* for appellant.

(1)   Carpenter v. McDavitt, 53 Mo. App. 393, is identical with the case at bar, and for the reasons in that opinion, this case ought to be reversed, because of failure of court to properly instruct the jury as to the rule by which to assess damage.   Commencing at page 402, the opinion settles this case. See cases in opinion cited.   Chamberton v. Porter, 9 Minn. 260; Teft v. Wilcox, 6 Kan. 46; Curtis v. Railroad, 20 Barb. 291; Sanderson v. Holland, 39 Mo. App. 233; Russell v. Columbia, 74 Mo. 480; Goss v. Railroad, 50 Mo. App. 614; McGowan v. Ore & Steel Co., 109 Mo. 518; Schaub v. Railroad, 106 Mo. 174; Knight v. Lead & Zinc Co., 75 Mo. App. 541; Hughes v. W. U. Tel. Co., 79 Mo. App. 133. (2) The special jury was not lawfully summoned.   R. S. 1899, secs. 3766, 10046, 10048, 10049, 3791.

*Holmes & Mosby, Murphy & Murphy* and *Harrison & Bland* for repondent.

(1)   The second proposition involved is, whether the instructions given on the part of the plaintiff are subject to the criticism set forth in appellant's brief, "because of failure of court to properly instruct the jury as to the rule by which to assess damages."   The instruction was sufficiently specific. Haymaker & Crookshanks v. Adams & Son, 61 Mo. App. 581, which overrules Carpenter v. McDavitt, 53 Mo. App. 393;

Browning v. Railroad, 124 Mo. 55; Harmon v. Donohoe, 153 Mo. 263. (2) The instruction as given limited the elements of damages arising from permanent injury, lameness and disfigurement; other elements, such as bodily pain, were alleged in the petition and proven on the trial. The omission of these elements of damages from the instructions did not prejudice the defendant, but was favorable to him, for it can not be assumed that the jury looked beyond the instruction for elements upon which to estimate the damages. The court, after confining the jury to permanent injury and disfigurement as the elements of damages, could not have added to the instruction any description of these terms that would have enlightened the jury on the meaning of the terms "permanent injury," "lameness" and "disfigurement." If such a thing was desirable the defendant should have elucidated the terms by asking appropriate instructions, which he failed to do. Fearey v. O'Neil, 149 Mo. 477; Browning v. Railroad, supra; Tetherow v. Railroad, 98 Mo. 86; Roe v. McCook, 70 Mo. App. 183. That which explains itself needs no explanation or elucidation. It is elementary law that when the damages are unliquidated, such as result from personal injury, the damages while confined to such as are compensatory, are largely in the discretion of the jury. Merrill v. St. Louis, 12 Mo. App. 466; Sawyer v. Railroad, 37 Mo. 240; Stewart v. Allison, 150 Mo. 343; Louisville v. Railroad, 37 Ala. 708; Davidson v. Kolb, 55 N. W. 373. The question as to the amount of the damages belongs to a jury. In the relation thereto they have a very broad discretion. The general rule is that a new trial will not be granted in an action of this kind for excessive damages unless they are so clearly excessive as to indicate that the jury acted from prejudice, partiality or corruption, or were misled as to the measure of damages. Kelsey v. Hay, 84 Ind. 189; Wenger v. Calder, 78 Ill. 275; State v. Hardester, 38 Ark. 605; Crabtree v. Vanhoozer,

53 Mo. App. 405; Hawes v. Kansas City, 103 Mo. 172; Rodney v. Railroad, 127 Mo. 676; Fields v. Railroad, 80 Mo. App. 603; Courtney v. Blackwell, 150 Mo. 345; Dammann v. St. Louis, 152 Mo. 156; Railroad v. Railroad, 138 Mo. 591; Berkson v. Railroad, 144 Mo. 211.   (3)   The bill of exceptions does not show any motion filed to quash the special venire, or any evidence in support of the motion at the time it was filed or before the trial of said cause.   "Objections to the panel or to jurors must be preserved by exceptions, and all exceptions taken in the progress in the trial must be preserved by the bill of exceptions."     State v. Taylor, 134 Mo. 109; State v. Dyer, 139 Mo. 199; State v. Marshall, 36 Mo. 400; Vierling v. Brewing Co., 15 Mo. App. 125; Nichols v. Stephens, 123 Mo. 96; Ryan v. Browning, 125 Mo. 475; Smith v. Kansas City, 128 Mo. 23.   "The objection that a jury has been improperly summoned and impaneled comes too late when made for the first time in a motion for a new trial." State v. Grant, 152 Mo. 57; State v. Brown, 119 Mo. 527; State v. Sanson, 116 Mo. 1; State v. Howard, 118 Mo. 127; State v. Waller, 88 Mo. 402; State v. Robinson, 71 Mo. 446.

GANTT, J.—This is an action for damages alleged to have been caused by the malpractice of defendant, who was and is a physician.

The petition in substance states that on the seventeenth day of February, 1896, the plaintiff, who is a married woman, by accident had a fall which dislocated her right shoulder; that at that time the defendant was engaged in the practice of medicine and surgery in Maries county in this State and held himself out to the community in which he and plaintiff resided as skilled in his said profession; that on the day and date of the fall and injury aforesaid to plaintiff, plaintiff having con-

Vol 163 mo—26

fidence in the skill of defendant, employed said defendant for a reasonable compensation to be paid by plaintiff to him, to set and heal the dislocation or fracture so as aforesaid received by her, and defendant in his capacity undertook to treat her arm and shoulder for said injury and gave her and her husband explicit directions for caring for her said injury, which directions she followed in every particular, but she states that defendant so negligently and unskillfully conducted himself in and about treating said dislocation or fracture and in attempting to reduce the same and heal plaintiff's said injuries, that through and by reason of his negligence and unskillfulness, plaintiff's said arm and shoulder grew stiff, and she entirely lost the use of the same and through said negligence and unskillfulness she is left in a deformed condition to such an extent, that her clothing worn in the usual manner will not hide the deformity. Plaintiff further states that by reason of the negligence and unskillfulness of defendant as aforesaid, she was made sick, and had to endure great pain and suffering for the period of six months, and was all that time unable to attend to her duties as the wife of Ray Wheeler; that she has entirely lost the use of her arm; that same is permanently deformed so she can not enter society without appearing in a deformed and crippled condition, which is apparent to the sight of every one, and by reason of such deformity plaintiff at all times suffers mortification of mind, and by reason of such negligence and unskillfulness of defendant, as aforesaid, she is wholly disabled from attending to her duties as the wife of Ray Wheeler, and is permanently injured, lamed and disfigured. Plaintiff says by reason of the premises she has been damaged in the sum of twenty-five thousand dollars, for which, with interest, from date of suit she prays judgment.

The answer is as follows:

"The defendant now comes, and by leave of the court first

had and obtained, makes the following amended answer to the amended petition of plaintiff.

"The defendant admits that on the seventeenth day of February, 1896, he was a physician and surgeon, and engaged in the practice of his profession as such, in Maries county, Missouri, and had been so engaged for many years; and that on or about that time the plaintiff's shoulder was dislocated, and that he was called upon in a professional capacity to treat the plaintiff therefor and reduce such dislocation, and says further that he properly treated the plaintiff, and reduced the said dislocation according to the usual and most approved method of medicine and surgery, and in every particular properly treated the plaintiff's wound and ailment, and having so done dismissed his said patient, and was paid for his professional services in so doing, and his employment then ceased, and if the plaintiff's arm and shoulder grew stiff, and she entirely lost the use of same, or became deformed, it was through no fault, negligence or unskillfulness on the part of the defendant.

"Defendant says that after properly treating the plaintiff's injury, and reducing the dislocation, and giving the same the proper treatment and attention, and the proper directions for caring for the same, he was not again called for by the plaintiff to treat the said wound, and if any other or greater inconvenience or injury resulted to the plaintiff than is inevitable and the usual and natural result thereof, it was occasioned by plaintiff's own negligence and want of care and caution, and the said defendant says that he is informed and believes, and so charges the fact to be, that the plaintiff, after being properly treated and advised in every particular by him, did again dislocate her arm or shoulder by attempting to perform hard labor, and performing her usual and ordinary household duties, before she had recovered from the wound aforesaid, and by attempting to do work and labor she was unable to do, and the certain

result of which would be to dislocate the joint again; that after the joint was again dislocated, he was not notified thereof, nor called upon to treat the case again, and had no opportunity so to do, and that all the injuries the plaintiff has suffered on account of said wound other than those necessarily occurring, and arising from such injuries, were occasioned by her own negligence and want of care in taking care of the same after treatment and that the same contributed thereto. The defendant denies every other allegation of the plaintiff not herein specifically admitted and having fully answered the complaint of plaintiff, asks to be discharged with costs.''

In her reply plaintiff denies the charge of contributory negligence on her part and again prays judgment. It will be observed that it is admitted in the pleading that plaintiff's shoulder was dislocated; that defendant was a surgeon and physician and was employed by plaintiff to reduce the dislocation and treat the said injury; that he undertook to do so and was paid for his services. The manner of the treatment; the contributory negligence of plaintiff and the extent of her injury, constituted the principal issues before the jury.

The testimony of the plaintiff and her witnesses tended to prove that the defendant failed to make a proper diagnosis of plaintiff's injury; that instead of recognizing it is a dislocation of the shoulder he pronounced it a bad sprain only, and on his cross-examination he said it was only a partial dislocation, and that he only used one test to prove that he had reduced the dislocation. When told the next day by plaintiff that her arm was very painful and that she had not been able to sleep at all during the night, he said there was no displacement; to apply vinegar and paper and it would soon get better; that he applied no bandages nor did anything else to relieve her. He saw her again on the ninth day after the dislocation and still did nothing to relieve her. Several weeks later, her arm continuing to

hurt her, she called on another physician, and he found her shoulder was dislocated, but as she was in a family way he didn't think it advisable to endeavor to reduce the dislocation. Plaintiff testified she told the defendant all the time she thought her arm was out of place.

Other physicians testified the arm was dislocated and it was very easy to ascertain when the dislocation was reduced; that after it was reduced the pain in a great measure should cease and if, as in this case, the patient continued to suffer great pain it would be strong evidence that the dislocation had not been reduced; that it should be bandaged at first in order to give the ligaments a chance to heal. The dislocation could be discovered by the rotary test and manipulation of the joint itself. The testimony of the different physicians tended to establish that the shoulder was dislocated and the proper tests would have readily discovered it soon afterwards, and that the proper method of treating it had not been observed, and the shoulder permanently disabled.

On the part of defendant, he testified in his own behalf that he reduced the dislocation the first evening; returned next day and found plaintiff resting easy, and discovered nothing out of place. "Don't remember, but will not deny, seeing plaintiff again on the ninth day after the injury—applied no bandages—and was never called again." Other evidence tended to show a second dislocation. Much medical evidence was heard as to the proper method of bandaging, and whether it was necessary at all, and these experts differed in their views from plaintiff's experts to some extent. The physicians all testified that the injury was permanent. There was some evidence that plaintiff used her arm too soon, and too vigorously, after the dislocation. There was a sharp conflict between plaintiff and defendant as to his treatment, and what was said by the defendant and his patient, and the medical gentlemen disagreed as to the pro-

priety of bandaging, but there was, after all, little difference between them as to the physician's duty if he found the patient suffering excruciating pain after the reduction or attempted reduction of the dislocation, and as to the evidence of a dislocation. On this point, as to the treatment defendant actually gave the plaintiff, it was a simple question of fact, and the witnesses did not agree. At the close of the evidence the court gave the following instructions:

"1. The court instructs the jury that one who holds himself out to the public as a physician and surgeon, the law implies a promise and duty on his part that he will use reasonable skill and diligence in the treatment, and for the care of those who may employ him; therefore, if you believe from the evidence that plaintiff employed defendant to set and heal the dislocation of plaintiff's shoulder, and that defendant negligently, carelessly and unskillfully treated and managed said dislocation, and that said dislocation was not set, placed or reduced, and through such negligence plaintiff's shoulder has become permanently injured, lamed and disfigured, then you will find for the plaintiff in a sum not to exceed twenty-five thousand dollars.

"2. The court instructs the jury that the only question in this case for your determination is whether the defendant, when called to see plaintiff on the seventeenth day of February, 1896, properly reduced and treated the dislocated shoulder of plaintiff, and gave her proper and necessary directions and instructions for the care of same. If he did, then he can not be held liable for any injury resulting from any redislocation of said shoulder that may have afterwards occurred. On the other hand, if, when called to see plaintiff on said date he failed to reduce and properly treat said dislocated shoulder and give proper and necessary directions for the care of same, or failed to exercise such care, and skill, as is used by the average members of his profession under like conditions and circumstances,

in attempting to so reduce and treat said dislocation, then you should find the issues for plaintiff according to the rule given in instruction number one.

"3. The court instructs the jury that the terms 'careless' and 'negligent' as used in these instructions, do not imply lack of skill or capacity, but simply a disregard of ordinary prudence, and, although you may believe the defendant, William Bowles, to have possessed all the qualifications necessary to a competent and skillful physician and surgeon, yet if it has been proven that he was careless and negligent in reducing the dislocation of plaintiff's shoulder, and that through such carelessness and negligence plaintiff's shoulder has been permanently injured, lamed and disfigured, then the mere fact that the defendant may have been competent and skillful constitutes no defense to this action.

"4. The court instructs the jury that in determining this case they are to consider that the defendant did not warrant a cure; but his contract, as implied in law, was that he possessed that reasonable degree of learning, skill and experience which is ordinarily possessed by others of his profession; that he would use reasonable and ordinary care and diligence in the treatment of the case, and that he would use his best judgment in all matters of doubt as to the proper course of treatment.

"The defendant is not responsible in damages for want of success, unless it is shown from the evidence to result from the want of ordinary skill and learning, and such as is ordinarily possessed by others of his profession acting under like circumstances, or from want of ordinary care and attention.

"The employment of the defendant by plaintiff was not for extraordinary diligence and care, and defendant can not be made responsible in damages for errors in judgment, or mere mistakes in matters of doubt or uncertainty, provided he exercised and used in the treatment of the plaintiff such reasonable

skill and diligence as is ordinarily exercised and used in the practice of the profession of defendant, by those who practice under like conditions.

"5. If the shoulder joint of the plaintiff slipped out of place, that is, was redislocated, after being properly set and treated by defendant, when called upon to treat her for dislocation of the shoulder as charged, and the patient dismissed, then the plaintiff can not recover herein, and the verdict must be for defendant.

"6. The court instructs the jury that proof of negligence need not be by direct testimony, but may be inferred by the jury from all the facts and circumstances in evidence in the case.

"7. The court instructs the jury that it is admitted by the pleadings that defendant, William Bowles, is a physician and surgeon, that plaintiff's shoulder was dislocated, and that plaintiff employed defendant to set and heal the said dislocation.

"8. The court instructs the jury that the services of the wife belong wholly to her husband, and if you believe from the evidence that plaintiff is a married woman, having a living husband, then, in estimating her damages, if any you find she has sustained, you will not take into consideration her loss of time or service as a result of her injury, if any.

"9. The court instructs the jury that the burden of proving that the defendant was careless and negligent in his treatment of the plaintiff is placed upon her, and before she can recover herein, she must establish such facts by a preponderance of testimony, and in the absence of such preponderance they will find the issues for the defendant.

"10. The burden is upon the defendant to prove to the reasonable satisfaction of the jury by the preponderance of the evidence the defense of contributory negligence set up and pleaded in his answer, and if he has failed to so prove and

satisfy the jury, the finding must be for the plaintiff on the issue of contributory negligence."

To the giving of which said instructions numbered 1, 2, 3, 6, 7, 8 and 10, the defendant, by counsel, duly excepted at the time.

Defendant asked other instructions which were refused, and it is unnecessary to reproduce them here at length.

Under the instructions of the court, the jury returned a verdict for plaintiff and assessed her damages at four thousand dollars. Various errors are suggested in the motion for new trial, and in arrest, but two points only are pressed in the brief of the defendant.

I. First, it is urged as error that the circuit court did not instruct the jury as to the rule by which they should estimate plaintiff's damages.

As to this point it is only necessary to remark that this is a civil action and mere non-direction is no ground of error in this court. The defendant did not submit any instruction on the elements of damages, neither did plaintiff. If defendant desired the jury restricted to certain elements he should have offered an appropriate instruction on that subject.

We are cited by counsel to Carpenter v. McDavitt, 53 Mo. App. 393. The decision in that case was subsequently overruled by the consent of the learned judge who wrote it in Haymaker v. Adams & Son, 61 Mo. App. 581, to conform to the opinion of this Court in Banc, in Browning v. Railroad, 124 Mo. 55. In the last named case the instruction was more general than the one we are considering, and it was held in the absence of any attempt by defendant to point out the elements of damage, it was not error.

It was further said that the courts are not required in a civil case to instruct on all questions, whether suggested or not. [Fearey v. O'Neill, 149 Mo. loc. cit. 477; Harmon v. Dono-

hoe, 153 Mo. loc. cit. 274-5.]

But independent of the ruling in the Browning case, the instruction in this case contained every element necessary. It required the jury to find that defendant was employed by plaintiff to set and heal her dislocated shoulder and that he negligently treated and managed it, and through his negligence the dislocation was not reduced and plaintiff's shoulder had become permanently injured, lamed and disfigured and then left the jury to find the amount plaintiff should recover for such injury. We think it sufficient, especially as the court, by instruction numbered 8, deprived the wife of the right to recover her loss of time and services because she was a married woman.

Indeed, we may remark that we have rarely found a fairer set of instructions in a negligence case. Surely defendant has no right to complain of them.

It is not the province of this court to weigh the evidence where there is substantial evidence upon which to base the verdict of the jury, as there was in this case.

II. Only one other error is assigned and that is aimed at the special jury which was summoned to try the case.

It is alleged that the jury was summoned by David Mosby, who was and is a brother of one of the counsel for plaintiff. The evidence taken on this averment of the motion discloses that J. H. Doyle was the sheriff of Maries county when this jury was ordered. It seems that both the counsel for plaintiff and defendant asked the sheriff after the order was made for the jury, to get them a good jury. The sheriff made out a list of jurors that he had selected, and summoned twelve of them himself, and then employed young Mosby to go after eleven others, whose names he gave him and told him if he couldn't find them not to attempt to substitute anybody else for them. The sheriff testified he made this list without suggestion of anyone else and without consulting anyone at all. He got

them from the west part of the county because the parties both lived in the eastern part, and the cause had been so much discussed in that section he wanted to avoid getting jurors who knew the facts. There was no proof that any member of the panel summoned was in the most remote manner interested in either plaintiff or defendant or that they received any suggestion from young Mosby that was improper. The court, after hearing the evidence, overruled the motion and we see no ground whatever for interfering with his finding. There is not a scintilla of evidence going to impeach the official integrity of the sheriff, nor any evidence of impropriety in the conduct of plaintiff's counsel, nor for that matter of defendant's counsel, who merely requested the sheriff to get a good jury.

After a careful reading of this record we find no error, and the judgment is affirmed. *Sherwood, P. J.,* and *Burgess, J.,* concur.