HENRY KLUSMAN, ET AL., RESPONDENTS, v. F. H. HARPER AND OTHERS, APPELLANTS.*

Kansas City Court of Appeals. June 6, 1927.

---

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2318, p. 530, n. 68; Courts, 15CJ, section 308, p. 920, n. 8; Death, 17CJ, section 235, p. 1350, n. 7; Master and Servant, 39CJ, section 1590, p. 1360, n. 60; Trial, 38Cyc, p. 1694, n. 58.

*Otto A. Imbersteg, W. B. Raez* and *W. B. Norris* for respondent.

*Shultz & Owen* for appellant.

WILLIAMS, C.—This is a suit brought in the circuit court of Buchanan county to recover for the death of plaintiff's six-year-old son who was killed on the 13th day of May, 1925.

It is alleged, and the jury found, that the death of the boy was the result of being run over by a train of wagons pulled by a tractor upon a public street in the city of St. Joseph.

It seems that the defendants were engaged in the collection of garbage at the time the child was run over, and were doing business as partners under the name of Harper Brothers Disposal Company. Steel wagons or trucks were used in collecting the garbage. When the wagons were loaded they would be collected by defendant and would form a train by hooking the tongue of one wagon to the rear of another. A tractor was hitched in front and the train connected to the tractor, and in such a way the wagons were moved.

At the time the child was killed the train comprised six wagons which extended almost one-half block, and was traveling at the rate of eighteen to twenty miles an hour. The wagons were about ten feet long and each weighed when loaded, about 4500 pounds. Garbage had been hauled in this manner for about a year before the boy was killed.

The public school was located on Fourth street, not far from where the casualty occurred. It seems as if this wagon train traveled along Fourth street about the time the children were going to school. The children had been in the habit of running out and getting on and off this train of wagons, and it seems that the children had been playing and riding on these wagons for at least a year before the boy was killed.

A witness testified that he had seen the same driver, driving the tractor "around a year."

A witness, John Csonke, testified he saw a number of children playing around the wagons shortly before this child was killed, and that the wagon train was traveling about eighteen or twenty miles an hour that there were three or four children on the side and they were starting to climb up on the tongue of the wagons. Witness testified he saw the driver get up in his seat and turn around and he said

something but he did not know whether he was "hollering at the boys or not" that the driver did not stop to put the boys off after he hollered and before the child was killed.

Another witness testified that the driver told the children to get off and then turned around and went on.

The driver of the truck did not testify and the defendant stood upon a general demurrer.

The case was submitted to the jury, the jury returned a verdict for $7166.67. After an unsuccessful motion for a new trial defendant has appealed.

In the original brief filed by appellant, the doctrine of the attractive nuisance is very ably discussed. The respondent however concedes in his brief that he cannot recover under this doctrine, and places his case squarely upon the humanitarian doctrine, and upon that doctrine he elects to stand or fall.

It is first contended by appellant that the demurrer offered at the close of plaintiff's case should have been sustained.

The appellant in his reply brief cites many cases and ably discusses them. However, the respondent concedes the propositions of law laid down in the cases cited by appellant. For example, Giles v. Railroad Co., 169 Mo. App. 27; Hall v. Railroad, 219 Mo. 586, 587; Youmis v. Railway Company, 143 Mo. App. 401; Stewart v. Ry. Co. (Mo.), 272 S. W. 694; but contends that the case of Dalton v. M. K. & T. R. R., 208 S. W. 828, is controlling.

The facts in the Dalton case as set out in the opinion of Judge GRAVES, are:

"In the switch yards in the northern part of Hannibal, Mo., is a track running near the bluff, which track is the west track of those yards. To the west of this track is a public road, and across this road, close into the bluff, is a store and some residences. These switch yards are a quarter of a mile or more in length, and lie between the public road above mentioned and the Mississippi river. Plaintiff and another boy were upon a car then standing upon this west switch yard track (near the north end thereof), and he was knocked therefrom by the force of a coupling or running together of other cars with the bunch of cars where plaintiff was located. In his fall he was thrown under the wheel of the car and both arms cut off. In an attempt to obviate the question of the plaintiff being a trespasser (pure and simple), the petition alleges at great length sundry alleged usages, as follows: That said switch yards were uninclosed; that the inhabitants along this public road obtained their water from a spring near the river and from the river; that in the yards for some years there had been a sand digger, which was attractive to children when it was in operation; that for a number of years there had been

a constant and continuous use of these yards by the citizens, including children; that there was (opposite these dwellings and store) a swimming pool in the river which was much used by boys at the season of this accident, and these boys daily crossed these yards; that for years there had been a continuous use of these yards by the public going from north to south through them; that for years these yards had been continuously used by children as a playground; that for years children and especially boys, were continuously in, around, and upon the cars standing in this switch yard; that defendants had knowledge of all these conditions.''

In Dalton v. M. K. & T. R. R., supra, the deceased was in the private switch yards of defendant, and this fact alone would make him a trespasser pure and simple. In the case at bar the deceased was riding upon the tongue of the wagon. Standing alone, this would make him a trespasser pure and simple.

In the Dalton case there was proof of the continuous use of the switch yard by boys and they played in, upon and around the cars standing in the switch yard.

In the case at bar the evidence shows that for a year the children had been getting on and off of the train of tanks or wagons. Children would run and get in between the wagons and ride on the tongue. This fact was known to the driver of the tractor which hauled the wagons. That very morning he had stopped and put children off. There is some evidence that he hollered at other children shortly before the deceased was run over.

In the Dalton case the court held that the continuous user would impute notice and would require the railroad to be upon the lookout.

The question then arises whether or not the boy was in a position of imminent peril. A child six years old riding between wagons joined together, each wagon weighing about 4500 pounds and running from eighteen to twenty miles an hour, would most certainly be in imminent peril. The speed at which the wagon was going was probably faster than the child could run, and if he voluntarily got off or accidently slipped off of the tongue of the wagon it would be almost impossible for him to pass from between the wagons in time to escape injury.

Was the fact that this boy was in imminent peril communicated to the driver in time to have avoided injury by the exercise of ordinary care?

One witness testified he saw the driver get up in his seat and look back, and at that time witness saw boys getting on the wagon and that the wagon was going about twenty miles an hour; that witness saw boys running along by the wagons and saw seven or eight between the wagons.

We think under this evidence that a case for the jury was made under the humanitarian rule, and that this evidence carries the case as far as Dalton v. M. K. & T. R. R., supra. Even if the case of Dalton v. M. K. & T. R. R., supra, extends the doctrine as is said by Judge Ferris, in his dissenting opinion, the majority opinion in that case is binding upon this court.

It is next contended by respondent that the instruction of the plaintiff is erroneous in that it submits the question of primary negligence as well as the humanitarian doctrine.

That part of the instruction complained of refers to the failure of defendant's driver to use the care that an ordinarily prudent person would have used, and refers to the dangerous position and the moving or continuing in motion of the wagons and submits the fact as to whether the boy was likely to fall and in the same instruction submits the question of user and notice.

We think instead of being in conflict with the law in Dalton v. M. K. & T. R. R., supra, that it follows the rule laid down as exemplified by the following quotation:

"It must be conceded that under the facts shown that it was defendant's duty to be on the lookout for children, and if by the exercise of ordinary care it could have seen the plaintiff in a position of peril in time to have averted the accident by the exercise of ordinary care, or if the defendants, as a fact, did see him in time to have avoided the accident by the exercise of ordinary care, then they are liable, notwithstanding the fact that the plaintiff was negligent in being where he was at the time of the accident. This is the humanitarian rule."

It is next contended that the petition does not state a cause of action by reason of the general allegation as to notice. No assault was made upon the petition in the trial court. The general allegation of notice is sufficient. In Snyder v. Wagner Elec. Co., 284 Mo. 285, we think under this rule the petition is sufficient.

The point is made that the verdict of $7166.67 is excessive. It is said in the case of McGraw v. O'Neil, 123 Mo. App. 1. c. 691: "Presumption is strongly in favor of the right action of the jury and that any excess in the verdict is the result of honest mistake; and where the verdict has received the sanction of the trial court it is attended with the further presumption that the judge exercised his discretion soundly and saw nothing to convince him of passion or prejudice."

The difficulty of producing evidence as to the loss sustained by the death of a child of tender years is so great that dependence must be placed, to some extent, at least, in the knowledge and experience of the jury.

The verdict in this case had the sanction of the trial court, and, in view of the presumption in McGraw v. O'Neil, supra, we do not feel that we should disturb it.

It is contended by appellant that the verdict should be set aside by reason of the misconduct of one of the jurors. The trial judge had the whole matter before him and refused to interfere. We see no reason to interfere with the ruling of the trial court upon that question.

In answer to the complaint made by appellant that the instruction on the measure of damages was erroneous, we will concede that the instruction is general. However, the appellant asked no instruction on the measure of damages and did not attempt to point out the necessary elements or supply the general language of the instruction given. In this state of the record this instruction was not erroneous. [Browning v. Wabash R. R. Co., 124 Mo. 55, 27 S. W. 644; Tabor v. Missouri Pacific R. R., 186 S. W. 688; Wheeler v. Boles, 163 Mo. 398, 63 S. W. 675.]

It is next contended that the argument of counsel was of such a character as to cause a reversal. The record does not show what was actually said. It is necessary that the remarks be set out *in haec verba*. In this case the record shows that the attorney for appellant said: "MR. SCHULTZ: We desire the record to show that Mr. Norris states in his argument, 'Maybe if the driver of the tractor had been produced he would have told you that he had told Harper he should put another man on there, and that we object to that remark, as being improper and prejudicial.'"

The court said, "let the record show the objections and that it is overruled."

This does not seem to meet the rule laid down in Edwin Churchman, by next Friend, Respondent, v. Kansas City, Appellant, 49 Mo. App. 366, l. c. 370.

Again this question was before the court in the case of Milliken v. Larabee, 192 S. W. 106, and the court said: "It is a well-settled law in this State that, whenever remarks of counsel during the progress of the trial shall amount to a misstatement of a material fact which is considered by the opposing counsel as prejudicial, it is necessary that an objection be noted to the party's remarks alleged to be objectionable, and to call the attention of the trial court to the specific ground on which the objection is based, and that the court be requested to rebuke counsel therefor, and should the court not administer the proper rebuke, counsel should then except to the court's failure to rebuke, and unless the record shows this to have been done, our courts, except in extreme cases, will not grant a new trial on this ground."

The last point urged by defendant is that there was no evidence that the driver was in the employ of defendant or that he was acting in the scope of his employment. The evidence shows that on all the wagons being hauled the words appeared "Harper Brothers Disposal Company," and that the driver had been driving the truck about a year.

The rule covering this contention is well stated by the Supreme Court of the State of Illinois in the case of East St. Louis Connecting Ry. Co. v. Altgen, 71 N. E. 377, l. c. 378, in which the court says: "It is first contended there is no evidence in the record that the engine and cars which caused the injury belonged to the defendant or were under the control or being operated by its servants at the time of the injury. That contention raises a question of fact only, and, if there is any evidence in the record fairly tending to establish that fact, then it was not error for the court, upon that question, to refuse to take the case from the jury. It is conceded that the engine which backed the cars against the locomotive upon which the plaintiff was riding at the time he was injured was marked 'E. St. L. C. Ry. Co.,' which was the abbreviation of its corporate name placed by the defendant upon all its engines. The defendant introduced no evidence upon the question of the ownership of said engine, or whose servants were operating the same at the time of the injury. Such being the state of the record, the fact that the engine which caused the injury bore the name of the defendant company was sufficient evidence of ownership, and that the servants of defendant were in possession thereof, to authorize the court to let the case upon that question go to the jury."

This rule finds support in the case of C. B. Brooks v. Missouri Pacific Railway Company, 98 Mo. App. 166, l. c. 177. We think the point is not well taken. Judgment affirmed. *Frank, C.,* concurs.

PER CURIAM:—The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. *Bland, J.,* and *Arnold, J.,* concur; *Trimble, P. J.,* absent.