LUNETTA WELLER, Appellant, v. PLAPAO LABO-
RATORIES INCORPORATION, Respondent.

St. Louis Court of Appeals.    Resubmitted and Reargued January 3, 1917.
Opinion Filed February 6, 1917.

1. **PHYSICIANS AND SURGEONS: Death by Wrongful Act: Improper
Appliances: Laws of Tennessee: Sufficiency of Evidence.**  In an
action under Sec. 4025 of Shannon's Edition of the Code of Ten-
nessee (1896), for the death of plaintiff's husband, alleged to have
been caused by an improper appliance for the cure of hernia,
negligently furnished him by defendant, it was shown that, for a
price paid, defendant furnished decedent with an appliance for
the cure of hernia and directions for using it—the appliance con-
sisting of a pad and belt, the former intended to press into the
hollow and over the protruding intestine, which was to be pushed
back, and to be covered with plaster;  that, a short while after
decedent applied the pad, it rose with the skin of the body, to
which it adhered, and left an opening through which his intestine
protruded;  that decedent died four days thereafter from locked
bowels, resulting from strangulated hernia;  and that the appli-
ance was not only insufficient, but was dangerous, and was not
recognized by the medical and surgical profession as being adapted
to the treatment of hernia.  *Held*, that the evidence was suffi-
cient to warrant submission of the case to the jury.

2. **DEATH BY WRONGFUL ACT: Physicians and Surgeons: Improper
Appliances: Laws of Tennessee.**  The widow of a man who died
in the State of Tennessee as a result of using an improper ap-
pliance for the cure of hernia, negligently sent to him from this
State by defendant, had a right of action for wrongful death,
under sections 5426, and 5427, R. S. of Missouri of 1909, as well
as under section 4025 of Shannon's Edition of the Code of Ten-
nessee (1896), which provides that the right of action which a
person who dies from injuries received from another, or whose
death is caused by the wrongful act, omission or killing by another,
would have had against the wrongdoer in case death had not en-
sued, shall not abate or be extinguished by his death, but shall
pass to his widow, and, in case there is no widow, to his children
or to his personal representative.

3. **PHYSICIANS AND SURGEONS: Nonprofessional Practitioner: Lia-
bility for Malpractice.**  A corporation which undertook to treat
and cure hernia, furnishing appliances for that purpose by mail,
was, although it did not hold itself out as a practicing physician

or surgeon, bound to use the care required of a physician or surgeon to do·no injury or furnish no harmful appliance, and hence was liable for negligence in furnishing a defective appliance.

4. ——: ——: ——: **Instructions.** In an action for the death of plaintiff's husband, alleged to have been caused by an improper appliance for the cure of hernia, negligently furnished him by defendant, *held* that instructions given for defendant, "that there was no evidence that defendant knew that the appliance was worthless, dangerous and unfit for use," and that the question which the jury were to decide was "merely one of knowledge or the exercise of proper diligence," were so contradictory as to tend to confuse and mislead the jury, and hence were prejudicially erroneous.

5. ——: ——: ——: **Instructions.** In an action for the death of plaintiff's husband, alleged to have been caused by an improper appliance for the cure of hernia, negligently furnished him by defendant, defendant produced, in response to a notice served by plaintiff, an order blank, which defendant claimed was the order for the appliance sent to it by decedent, plaintiff claiming that it was not the blank sent by decedent. At the request of defendant, the court gave an instruction to the effect that, whatever may have been the representations made by defendant as to the appliance, such representations cannot be considered as affording plaintiff any cause of action, and further instructed that, unless the order blank read in evidence as defendant's exhibit was the order received by defendant, there was no basis on which any conclusion could be reached as to the order for the appliance, on which it was sent by defendant, and accordingly no basis for the representation. *Held,* that the instructions are contradictory and confusing, and proceed on the erroneous theory that the action is based upon false representations, instead of negligence.

6. **INSTRUCTIONS: Contradictory Instructions.** Instructions that contradict each other, and thereby tend to confuse the jury, are prejudicially erroneous.

7. ——: **Submission of Erroneous Theory.** An instruction that directs a finding upon a hypothesis predicated upon an erroneous conception of the nature of the cause of action asserted is prejudicially erroneous.

8. **WITNESSES: Credibility: Instructions.** Where there is a sharp conflict in the evidence, it is not error to give an instruction as to the credibility of witnesses.

9. **INSTRUCTIONS: Refusal: Omission of Defenses.** An instruction for plaintiff, purporting to cover the whole case, is erroneous, if it fails to refer to a material defense pleaded and in evidence.

10. ——: ——: **Unnecessary Instruction.** It is not error to refuse an instruction defining a term, if that term is not used in any of the instructions.

11. **TRIAL PRACTICE**: Improper Remarks of Court. In an action for wrongful death, *held* that the record fails to show any improper action or comment by the trial judge.

12. **PHYSICIANS AND SURGEONS**: Nonprofessional Practitioner: Malpractice: Defenses. In an action for the death of plaintiff's husband, alleged to have been caused by an improper appliance for the cure of hernia, negligently furnished him by defendant, affidavits which had been sent to defendant by persons purporting to have used the appliance with success were admissible to show the knowledge that defendant had with respect to the appliance at the time it was sent to decedent.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. C. Hitchcock*, Judge.

REVERSED AND REMANDED.

*Wilfred Hearn* and *Earl M. Pirkey* for appellant.

(1) Where a party holds himself out as skilled in the treatment of an ailment, and undertakes to treat the ailment, he must use ordinary skill and knowledge required for the treatment of the ailment, and where he represents an appliance as suitable for the treatment of an ailment, and it is unsuitable, he is liable if an injury results to a party who uses it in reliance on his representations and is injured because it is unfit. Darks v. Scudder Gale Grocery Co., 146 Mo. App. 246; Bowles v. Wheeler, 163 Mo. 401. (2) All instructions of the court must be in writing. R. S. 1987. (3) It is error for the court to comment on the evidence orally. Wright v. Richmond, 21 Mo. App. 81; Rose v. Kansas City, 125 Mo. App. 236; Schmidt v. St. L. Railroad Co., 149 Mo. 283. (4) The old form of credibility in-

struction is erroneous. Keeline v. Sealy, 257 Mo. 527. (5) Where the petition states more than is required, plaintiff does not forfeit the right to recover upon proof of facts required to be stated. Campbell v. Railroad, 121 Mo. 348; Hartpence v. Rogers, 143 Mo. 632; Taylor v. Railroad, 207 Mo. 501. (6) Affidavits of persons who are competent witnesses in a suit, are inadmissible in evidence. Patterson v. Fagan et al., 38 Mo. 82.

*Chester H. Krum* for respondent.

REYNOLDS, P. J.—This is an action for damages claimed to have accrued to plaintiff on account of the death of her husband, A. J. Weller, who died from "locked bowels," resulting from strangulated hernia.

The petition alleges that plaintiff is the widow of deceased; that he left no minor children and no personal representative; that he had brought no action prior to his death on account of the injuries mentioned in the petition, and that he died intestate. It is then averred that defendant represented itself to decedent, who was then suffering from hernia, as skillful in the treatment of that affliction and as having and furnishing and using for its treatment an appliance known as Plas-tr-pads, and that these appliances were suitable and safe for treating his hernia and would cure him of it; that decedent, then residing at Nashville, Tenn., applied to defendant in the city of St. Louis for that appliance and for directions for using it for his affliction, and informed defendant that he desired it for that purpose; that he paid defendant the price demanded for the appliance and directions; that defendant, in response to the application and payment, sent from St. Louis to decedent at Nashville, and for the purpose of treating his hernia, one of its plas-tr-pads and directions for using it; that decedent thereafter, relying on the representations and directions of defendant, used the appli-

ance for his affliction according to the directions of defendant, "when by reason of the wrongful acts, faults and omissions of defendant herein mentioned and while so using it and whilst in the State of Tennessee, said appliance, because it was defective, insufficient, worthless, dangerous, and unfit for the purpose for which defendant had so furnished it, caused and permitted said hernia to become a strangulated hernia and caused and permitted parts of internal organs of the body of said A. J. Weller to escape and protrude from their proper place, whereby said A. J. Weller was so injured that he died of said injuries on August 19, 1910, in the State of Tennessee; that at the times herein mentioned said appliance was defective, insufficient, worthless, dangerous, and unfit for treating hernia and for the purpose for which defendant so furnished it to A. J. Weller, as aforesaid."

It is further averred that defendant knew, or by the exercise of ordinary care would have known, that the appliance was insufficient, worthless, dangerous and unfit, as aforesaid, and of the danger of injury to decedent from so using it as he did use it, "yet thereafter defendant wrongfully and negligently furnished the same to said A. J. Weller for him to use as he so used it aforesaid and wrongfully and negligently directed him to use it as he so used it, all without protection or notice of any kind to him and thereby directly caused his said injuries and death."

It is further averred that A. J. Weller was a citizen and inhabitant and resident of the State of Tennessee, and that plaintiff is still a resident, inhabitant and citizen of that State, and that defendant has always been a resident of and located in the city of St. Louis.

Various sections of the statutes of the State of Tennessee are pleaded and set out in full, which will be found in Shannon's Edition of the Code of Tennessee (1896), commencing with section 4025, on page 986. Section 4025 is entitled, "Right of action in case of injuries or death," and reads:

"The right of action which a person who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his widow, and, in case there is no widow, to his children or to his personal representative, for the benefit of his widow or next of kin, free from the claims of creditors."

Other sections provide how and by whom the action is to be prosecuted, when it may be instituted by the widow or children; the measure of damages and limitations of action, all unnecessary to set out here.

Averring that by his injuries so sustained A. J. Weller suffered greatly, both mentally and physically, and lost much time and incurred large expenses and became liable for large expenses, and that prior to his death had lived with, supported and protected plaintiff and by the death of her husband plaintiff lost his care, maintenance and support, all to her damage in the sum of $7500, judgment is asked for that amount.

The answer was a general denial.

At a trial before the court and a jury a verdict was returned in favor of defendant, from which plaintiff has duly perfected her appeal to our court.

The errors here assigned are to the giving of certain instructions at the request of defendant and one by the court of its own motion, the refusal of two instructions asked by plaintiff, improper exclusion of evidence offered by plaintiff, the improper admission of evidence offered by defendant, and improper remarks by the court.

It appears that the decedent had been suffering from hernia for a number of years and had been wearing steel and elastic trusses. Acting for decedent, his wife, from their home in Tennessee, wrote to defendant at St. Louis, in the name of her husband, that seeing the advertisement of defendant in a publication named, he wrote for a trial treatment of defendant's plas-tr-pads for rupture. In response to this decedent received

a blank printed slip and book of testimonials, together with some ointment. It further appears that after receiving the above articles plaintiff, or his wife, filled up the blank and returned it to defendant with a postal order for $6.75. In answer to this decedent received three of the plas-tr-pads and directions for applying them. Plaintiff, testifying at the trial, said these directions were lost. These plas-tr-pads were received on August 15, 1910, in the afternoon, and plaintiff applied them to her husband, the appliance consisting of a pad and a belt, the pad containing medicinal matter, as it is said, and intended to press into the hollow and over the protruding intestine, which was to be pushed back, that part of the pad being covered with plaster so that on being affixed to the body of the patient it adhered. After applying this pad decedent, who was an engineer on a switch engine, went to work and the day after the intestine protruded and Mr. Weller being taken to a hospital, it was found that he had a case of "locked bowel," resulting from strangulated hernia, from which he died on August 19.

It appears that the blank slip above mentioned as sent with the literature to plaintiff was to be filled up among other matter, with a description of the case and measurements of plaintiff. What was claimed to be this blank, printed on white paper, and filled up with answers and with what purported to be the name of plaintiff signed to it, was produced by defendant, but plaintiff testified that it was not the blank she had signed and sent to defendant; that the one she had signed and sent was on a "kind of a yellow paper," which she thought contained questions and answers as to the age and weight of her husband, as well as his height. Beyond this she did not remember what was on it, but testified very positively that the blank shown to her printed on white paper was not the one she had signed and sent on, and that she did not recognize the signature to it as her own. There was testimony from an expert produced by defendant, that the signature on this blank was writ-

ten by the same person who had signed the letter plaintiff had admitted she had sent to defendant, that is, the letter first above referred to, asking for trial treatment of a pad for rupture. An expert testifying for plaintiff said the two signatures were not by the same person. The blank printed on white paper was produced by defendant in answer to a notice to produce the paper plaintiff had sent, given by plaintiff, and defendant produced the white paper, its president testifying that they had never received any blank from plaintiff or anyone else printed on ''a kind of yellow paper,'' and that this one printed on white paper was the one they had received. There was evidence for defendant which it was claimed tended to prove that in the directions or literature sent to plaintiff or her husband by defendant, the use of a proper truss to keep the entrail or bowel in place was recommended by defendant in cases of rupture.

There was evidence on behalf of plaintiff tending to prove that this appliance was not only entirely insufficient for the treatment of hernia, but was dangerous, and that it was not recognized by the medical or surgical profession as adapted for any such purpose, and that when this pad was applied to plaintiff's husband, after having been on a short time, it rose with the skin of the body to which it adhered and left an opening through which the intestine protruded.

On behalf of defendant there was evidence tending to prove that the pad had been successfully used in the treatment of that affliction and that defendant had, in good faith as to its curative qualities, when properly used, put it on the market. Defendant also introduced evidence which it is claimed tended to prove that on sending it to decedent, defendant had recommended that in certain cases of rupture or hernia, it had put out the caution that this pad would not itself hold the rupture but that a spring or elastic truss should be used in conjunction with the pad.

The statutes of Tennessee referred to were in evidence.

The instructions given at the instance of defendant and of which plaintiff complains are as follows:

"3. The court, instructs the jury, that before there can be a recovery in this case, the plaintiff must have shown that the defendant knew that the appliance for rupture, made and sold by it, *was worthless, dangerous and unfit for use* in cases of rupture, or might have so learned by the exercise of reasonable diligence, by which is meant doing what any reasonable person would have done under like circumstances. *There is no evidence of the necessary* knowledge above indicated. As to the question of proper diligence in learning whether its appliance was worthless, or calculated to injure one who used it, if the defendant from all of the facts and circumstances attending the use by it of the appliance sold was led to believe that it was adapted to the use for which it was devised *and any reasonable person* would have so believed under the same circumstances, then the defendant cannot be charged with any lack of diligence in the premises as to being informed as to the worthless nature of the appliance, if it was so worthless." (Italics ours.)

"4. The court instructs the jury that whatever may have been the representations made by the defendant as to the appliance, which it made and sold, such representations cannot be considered as affording plaintiff any cause of action against the defendant—the question, which the jury are to decide under the instructions given, being merely one of knowledge, or the exercise of proper diligence by the defendant in learning whether the appliance made and sold by it was unfit in the particulars hereinbefore set forth in these instructions."

"5. The court instructs the jury, that unless the order blank read in evidence as defendant's exhibit 1, is the order received by the defendant, there is no basis on which any conclusion can be reached as to the order for plaster pads on which the pads were sent by the defendant and accordingly no basis for the representation. If the jury believe that the only blank used was the one on yellow paper as testified to by the plaintiff, they must return a verdict for the defendant."

The instructions given by the court of its own motion are the usual instructions on the burden of proof and the credibility of witnesses and the number of jurors necessary to concur in a verdict. An instruction as to the measure of damages was given at the instance of plaintiff, but two other instructions which plaintiff asked were refused. The first asked by plaintiff is a very long one and purports to cover the whole case. It is not necessary to set it out. The second of plaintiff's refused instructions is a definition of ordinary care. A number of instructions asked by defendant were refused, but it is unnecessary to set them out, as the defendant is the respondent.

Learned counsel for respondent contends that on the petition and the facts in evidence the court should have directed a verdict for defendant, and that the statute of Tennessee pleaded, and which we have quoted, does not provide for the survival of an action such as this. We do not think that position is maintainable.

We have set out a sufficient summary of the evidence to show that this was a case for the jury.

Construing the statute of that State on actions for personal injuries, the Supreme Court of Tennessee has said, in East Tennessee, Virginia and Georgia R. R. Co. v. Fain, 12 Lea (80 Tenn.) 35, l. c. 39:

"Where a person uses his own property carelessly and negligently, without a reasonable degree of care and caution not to injure others, such as a prudent man would under the circumstances have observed, especially where injury was likely to ensue, he will be civilly liable."

In Trafford, Admr., v. Adams Express Co., 8 Lea (76 Tenn.) 96, l. c. 100, construing the section of the statute providing for the survival of actions and giving the right of action to the widow and others when death has resulted from accident, the Supreme Court of that State has said:

"The construction put upon the provisions of the Code was, in accord with the current of authority in similar enactments, that they were not intended to be

limited to the case of the killing of a husband and father, but were designed to abrogate the common law rule, and to include every case of wrongful killing."

And at page 102 it is said:

"But the weight of authority undoubtedly is, and so this court has repeatedly said, that the object of the act was to abolish the common law rule, and to allow the right of action which the injured party would have had if he had lived to survive to his personal representative."

Further along, at page 103, noting the change made in the common law rule by Lord Campbell's Act (9 and 10 Vict., 93), it is said:

"The damages were not to be in the nature of a *solatium*, but compensation to the family of the deceased equivalent to the pecuniary benefits which the family might have reasonably expected from the continuance of his life. . . . The injury to the deceased was not an element in the recovery, but only the pecuniary loss of the relative entitled to the benefit of the recovery, and therefore if no damage to the relative be proved, although he may be the father of the deceased, there can be no recovery."

In Wagner v. Woolsey, Admx., 1 Heisk. (57 Tenn.) 235, construing the same statute, it is said (l. c. 236):

"The right of action that survives under this section of the Code, is one for injuries of which the party injured dies—that is, for injuries or wrongs causing his death, and this suit is brought on the assumption that the facts alleged and shown by the proof, caused the death of the husband, in the sense intended by the statute, or as a legal consequence of such acts. . . . But this action must be sustained by proof of wrongs or omissions, causing the death of the party."

In Louisville & Nashville R. R. Co. v. Pitt, Admr., 7 Pickle (91 Tenn.) 86, 18 S. W. 118, also construing the statute, it is said that to authorize a recovery under it two facts are essential: first, a wrongful act by the defendant, causing death; secondly, the existence of the parties authorized by the statute to sue.

We are citing these Tennessee cases construing their statute for the purpose of showing that the construction placed upon it is practically the construction placed by our courts on sections 5426 and 5427, Revised Statutes 1909, both as to the right of action, its survival, the parties who can recover, and the measure of damages. If plaintiff's husband, came to his death by the negligent act of the defendant, and negligence is a wrongful act, then under our statutes as well as under that of Tennessee, the defendant is liable to the plaintiff as the widow of the decedent.

In Darks et al. v. Scudder Gale Grocer Co., 146 Mo. App. 246, 130 S. W. 430. Judge Gray, speaking for the Springfield Court of Appeals when that court was supposed to have jurisdiction of the cause, has compiled a multitude of authorities from our State as well as elsewhere, covering actions for negligence where death occurs as the result of the negligence or wrongful act of another. The authorities are there so fully compiled, that it is unnecessary to repeat them. When that cause came back to our court we adopted the opinion and conclusion of the Springfield Court of Appeals as that of our court, as see Darks et al. v. Scudder-Gale Grocer Co., 171 Mo. App. 37, 153 S. W. 1199.

Our Supreme Court in Wheeler v. Bowles, 163 Mo. 398, 63 S. W. 675, has considered the question of right of action for damages in case of malpractice by a physician. In that case it is said that the question as to the treatment the defendant, a physician and surgeon, actually gave plaintiff was a simple question of fact on which the witnesses did not agree and that made it a case for the jury. The court approved an instruction which told the jury, among other things, that if they found the defendant had negligently, carelessly and unskillfully treated and managed the dislocation, and that it was not set, placed or reduced, and through such negligence plaintiff's shoulder had become permanently injured, lame and disfigured, then they should find for plaintiff in the sum mentioned. It further approved an instruction which told the jury, among other things and in sub-

stance, that the only question for the determination of the jury was whether the defendant, when called to see plaintiff, properly reduced and treated the dislocated shoulder of plaintiff and gave her proper and necessary directions and instructions for the care of it; that if he did, he could not be held liable for any injury resulting from any dislocation of the shoulder that may have afterwards occurred. If, on the other hand, when called to see plaintiff, defendant failed to reduce and properly treat the dislocated shoulder and to give proper and necessary directions for the care of it, or failed to exercise such care and skill as is used by members of the profession under like conditions and circumstances in attempting to so reduce and treat the dislocation, defendant is liable.

While not altogether applicable here, these cases are illustrative of the proposition that a case of the kind now before us falls under the classification of actions for negligence; applied in the Darks case, supra, to the sale of an article containing poisonous fluid; in the Wheeler case, supra, to a case of malpractice.

True, defendant here—a corporation—was not holding itself out as a physician or surgeon, but there is testimony tending to prove it did undertake, as evidenced by its literature sent to plaintiff's husband, to treat and cure hernia, and a cure is more than any reputable physician or surgeon usually guarantees. [Vanhooser v. Berghoff, 90 Mo. 487, 3 S. W. 72; Ruth v. McPherson, 150 Mo. App. 694, l. c. 702, 131 S. W. 474.] That it undertook to treat the decedent for his affliction by mail or correspondence and without a personal inspection and visit, is immaterial. It did undertake to cure decedent of his affliction, if he used its pad. It has been held that while it is true "that the surgeon is not required to exercise extraordinary or unusual care in the performance of his task, the fact of his holding out to perform the duties of the office he pursues annexes the obligation to his calling to exercise the care, skill and diligence that are ordinarily possessed by the average members of his

profession in good standing in similar localities—regard being also had to the state of medical and surgical science at the time.''. [Reeves v. Lutz, 179 Mo. App. 61, and cases cited at page 74 (162 S. W. 280).] While, as we have said, defendant did not hold itself out as a practicing physician and surgeon, when it undertook to treat and even cure hernia or rupture, it surely was under the like obligation of a physician and surgeon to do so with all due care for the life of the patient, or, as here, its customer, and that it exercise the care required to do no injury or furnish no harmful appliance. Failure to do that is actionable negligence and if injury results, and the party treated dies, then the act of the defendant was a wrongful act. Defendant had no right to send out this appliance unless it knew, or had reason to believe, that it was reasonably safe.

Regarding this as an action to recover damages for negligence, for a wrongful act causing death, we think that it is maintainable under either the laws of Tennessee or those of our State. The evidence in it was of such a character as rendered it peculiarly one for the determination, in the first instance, by a jury, so we find no reason to hold either that the petition fails to state a cause of action, or that the court erred in submitting the cause on the evidence to the jury, as now and here argued by learned counsel for respondent.

Instruction No. 3, given for defendant, among other things, tells the jury, in substance, that *there was no evidence that the defendant knew* that the appliance for rupture was worthless, dangerous and unfit for use in case of rupture; whereas instruction No. 4, also given at the instance of the defendant, told the jury that the question which they were to decide was ''merely one of knowledge, or the exercise of proper diligence,'' etc. These two instructions are so contradictory in this particular that they could not well fail to confuse and mislead the jury.

Again, instruction No. 4 tells the jury that *''whatever may have been the representations made by the defendant as to the appliance, which it made and sold,*

*such representations cannot be considered as affording
plaintiff any cause of action against the defendant."*
But instruction No. 5, also given at the instance of de-
fendant, tells the jury *"that unless the order blank read
in evidence as defendant's exhibit No 1, is the order
received by the defendant, there is no basis on which
any conclusion can be reached as to the order for plaster
pads on which the pads were sent by the defendant and
accordingly no basis for the representation."* In other
words, instruction No. 4 tells the jury that in no event
can representations made afford plaintiff any cause of
action, whereas No. 5 qualifies this in the manner above
indicated. These instructions in so holding are contra-
dictory, confusing and wrong. They are further wrong
in that they proceed on the basis that this is an action to
recover for false representations, whereas as we have
hereinbefore held, this is an action for negligence.

The instruction given by the court of its own motion
and which is complained of, is the ordinary instruction
as to the credibility of witnesses. As against this in-
struction we are cited by learned counsel for appellant
to Keeline v. Dealy et al., 257 Mo. 498, l. c. 527, 165 S.
W. 1088. The facts there present in no manner corres-
pond to the ones here. Here was a sharp conflict in the
evidence, and an instruction of this character, which was
correctly framed, was properly given.

As to the refusal of appellant's instruction, the first
one marked "A," the long one which we have referred
to, we think it was properly refused for the reason that
while purporting to cover all of the case, it left out very
material matters interposed by the defendants and in
evidence as the defense. Without pointing out these
omissions in detail, it is sufficient to say that for this
error, if for no other, that instruction was properly
refused.

The other instruction requested by plaintiff, defin-
ing ordinary care, was in proper form, but in none of
the instructions which have been submitted to us as given
do we find the expression "ordinary care" used, except
in the one asked by plaintiff and that was refused. Re-

fusing that instruction, and as we held properly, the court committed no error in refusing this, which is a mere supplement of the one refused.

The error assigned to the action of the court in commenting on the evidence orally is untenable. A very careful reading of all of the proceedings at the trial as presented by the abstract prepared by the appellant, fails to show anything in the action or comment of the court that is in any manner improper.

A number of affidavits were introduced which had been sent defendant by persons purporting to have used its appliance. The court very distinctly ruled as to these when they were offered that they were not introduced and not admitted "for the purpose of proving that the various people who wrote them got well or did not get well, but they were introduced to show the knowledge which the defendant had in respect to this appliance at the time it was sent to the plaintiff in the case." For that purpose we think they were admissible.

For the error in respect to the instructions which we have pointed out, the judgment of the circuit court is reversed and the cause remanded for such further proceedings as may be had and in the line here indicated. *Allen* and *Becker, JJ.*, concur.