# DOUGLAS W. ROBERT, Appellant v. RIALTO BUILDING COMPANY, Respondent.

### St. Louis Court of Appeals. Opinion Filed December 4, 1917.

1. **TRIAL PRACTICE: Instructions: Credibility of Witnesses.** Where there was a direct conflict in the testimony, not reasonably attributable to mistake, inadvertence, or lapse of memory, an instruction as to the credibility of witnesses was proper.

2. **APPELLATE PRACTICE: Review: New Trial.** On appeal from an order granting a new trial, the appellate court is not confined to the grounds assigned by the trial court in sustaining the motion but may take into consideration other grounds thereof, and will affirm the ruling if it appear that the granting of the new trial was proper on any ground of the motion—with the qualification, however, that where the trial court has impliedly overruled an assignment in the motion that the verdict is against the weight of the evidence, the appellate court will not affirm the ruling granting a new trial, if erroneous on the ground or grounds assigned, and not otherwise justified, by holding that the verdict is against the weight of the evidence and that for this reason the granting of the new trial was proper, since to do so would require that the appellate court weigh the evidence; though the appellate court may uphold the granting of the new trial if the verdict is supported by no substantial evidence.

3. **BAILMENTS: Evidence: Question for Jury.** Evidence as to receipt of property by defendant as bailee, *held*, sufficient to go to the jury.

4. **———: Instructions: Evidence: Prima-facie Case.** An instruction that if the jury found that plaintiff delivered the property to defendant or its agent, and that defendant failed or refused to return the same on demand, then to find for plaintiff, *held* not improper,

though defendant was a gratuitous bailee, where defendant claimed that the property had been returned to plaintiff and this—aside from the question as to the agent's authority—was the only issue tried.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. George H. Shields,* Judge.

REVERSED AND REMANDED (*with direction*).

*Brownrigg, Mason & Altman* for appellant.

, It was not error to give the instruction on the credibility of witnesses. There was a decided conflict in the testimony. The circuit court misconstrued the case of Keeline v. Sealy, 257 Mo. 497; Weller v. Laboratories Corp., 191 S. W. 1056; Volk v. Zepp, 190 S. W. 609; Dawson v. Flintom, 190 S. W. 972; Schuler v. Life Ins. Co., 176 S. W. 274; Price v. Building Construction Co., 191 Mo. App. 395.

*Blodgett & Rector* for respondent.

(1) The action of the trial court in granting the defendant a new trial should be upheld because the verdict of the jury was clearly against the weight of the evidence. (2) It was gross error to read to the jury instruction No. 1 offered by the plaintiff, in view of the fact that at most defendant was only a gratuitous bailee and liable only for gross negligence. Story on Bailments, 1. c. 63; McKenna v. Walker, 85 Mo. App. 570; Taussig v. Shields, 26 Mo. App. 318; Wiser v. Chesley, 53 Mo. 547; Mason v. Stockyards Co., 60 Mo. App. 97; 3 Ruling Case Law, sec. 27, p. 102; Townsend v. Meagher, 44 Mo. 368. (3) The trial court's action in granting defendant a new trial on account of the erroneous giving of instruction No. 5 of the court's own motion was proper. Keeline v. Sealy, 257 Mo. 527.

ALLEN, J.—This action was instituted before ·a justice of the peace to recover the value of three chairs,

which, it is charged, were received by the defendant corporation from plaintiff "for safe-keeping and delivery of same" to plaintiff, and which defendant refused to so deliver on plaintiff's demand. The trial before the justice of the peace resulted in a judgment for plaintiff and on defendant's appeal to the circuit court and a trial there *de novo,* before the court and a jury, there was a verdict and judgment for plaintiff in the sum of $40. Thereafter, the court sustained defendant's motion for a new trial upon the ground that the court had committed error in giving an instruction to the jury, of the court's own motion, on the credibility of witnesses and the weight to be given to their testimony. From the order granting such new trial plaintiff prosecutes the appeal before us.

It appears that plaintiff, an attorney at law, became a tenant of the defendant on March 1, 1912, upon which date plaintiff moved his law office from another building in the City of St. Louis to the "Rialto Building," taking with him certain office furniture, including six "reception-room chairs;" and that for lack of room in his new quarters plaintiff requested one Gus Wichman, "janitor" of defendant's building, and said by plaintiff to have been in charge thereof, to take three of these chairs and store them for plaintiff for a time. It is undisputed that Wichman received the three chairs at or about the time when plaintiff became a tenant of the building. The remaining three of the six chairs were placed in plaintiff's lobby or reception-room constituting a part of his offices in the building. It seems that the three chairs delivered to Wichman were placed by him in his "private office," on the same floor on which plaintiff's offices were situated.

Plaintiff's testimony is that the three chairs which had been delivered to Wichman were never returned. On or about March 1, 1914, plaintiff moved from the building, as stated above, and shortly prior to that date plaintiff made demand upon Wichman for the three chairs in controversy. Plaintiff's testimony is that when such demand was made, Wichman said that he did not have

the chairs and did not know where they were; that thereupon plaintiff and Wichman made search in the attic of the building and throughout all the floors thereof but were unable to locate the chairs; that in the latter part of April or early in May, 1914, Wichman came to plaintiff's office and, for the first time, asserted that the chairs had been previously delivered to plaintiff.

In behalf of defendant the testimony is that the three chairs left with Wichman on about March 1, 1912, were delivered to plaintiff, at the request of a stenographer then in plaintiff's employ, by depositing them in his lobby or reception-room in the Rialto Building some time in the summer of 1912. Wichman testified that pursuant to this request he ordered his assistants, one Kolen and Kalisch, to take the chairs to plaintiff's office, and that this was done in the latter part of June or early in July, 1912. And this witness declared that when plaintiff made demand for the chairs, about March 1, 1914, he then told plaintiff that they had been previously returned. Kolin and Kalisch testified that they took three chairs to plaintiff's office in the summer of 1912; and plaintiff's former stenographer—who was with plaintiff but for a few months during that summer —testified that she received the chairs.

Plaintiff, however, denying that the chairs in controversy were ever returned to his office, testified that during all of the time that he occupied offices in the Rialto building he had but three of the original six chairs in his lobby or reception-room. And an attorney, who had previously been a member of plaintiff's former law firm, and who was familiar with the six reception-room chairs mentioned, testified that after plaintiff moved to the Rialto building he was in the latter's offices there almost daily until about October 1, 1912, in connection with matters of business in which he and plaintiff were interested, and that during all of that period he saw but three of these chairs in plaintiff's lobby or reception-room.

Touching the matter of Wichman's authority, plaintiff testified that Wichman was in charge of the Rialto

building during the period in question; that there was no one "in the building over him;" that it was defendant's custom to take care of any furniture for a tenant in the building and store it, usually in the attic; and that no furniture could be removed from the building without Wichman's permission.

Wichman at first testified that it was not the custom of the building company to store furniture for tenants, and that the attic contained boxes "and a lot of stuff," but no furniture. Later he said that there was some "old scratched chairs up there and so on, if you want to call that furniture." And still later in his testimony he admitted that he had often had tenants ask him to take charge of furniture for them and that he had done so; that he had placed desks in the attic as well as in his office; and that this had been his practice.

An employee of a trust company, which acted as agent for the Rialto building, testified that his duties included the general management of the building, leasing and renting offices, etc., and that he employed the head janitor and engineer; that Wichman's duties were "to look after the general upkeep of the building, the cleaning and so forth, and to take care of any ordinary requests of the tenants, furnishing keys or anything of that nature." He stated that he knew, at the time, that Wichman had charge of plaintiff's three chairs, having seen them in Wichman's office.

## I.

The instruction given by the court on the credibility of witnesses, for the giving of which the new trial was granted, is the ordinary instruction of that character, and amoung other things tells the jury that if they believe that any witness has sworn falsely to any fact or facts material to the issues in the case then the jury are at liberty to reject all or any portion of the testimony of such witness. It appears that upon the authority of Keeline v. Sealy, 257 Mo. 498, 165 S. W.

1088, the court concluded that reversible error was committed in giving the instruction. A reading of that opinion, however, will disclose that the giving of a like instruction was held to be error for the reason that there was nothing in the testimony in the case to afford a basis for the giving thereof. With that opinion before us we have more than once held that the giving of an instruction of this character is not error where there is a direct conflict in the testimony as to a material fact, or material facts, which cannot reasonably be attributed to mistake, inadvertence or lapse of memory; i. e. where there is contradictory evidence in the record of such a nature that the jury may with propriety find that a witness or witnesses wilfully gave false testimony as to a matter or matters material to the issues. [See Schuler v. Met. Life Ins. Co., 191 Mo. App. 52, 1. c. 74, 75, 176 S. W. 274; Price v. Bldg. & Const. Co., 191 Mo. App. 395, 1. c. 404, 177 S. W. 700; Cohen v. Terminal Ry. Co., 193 Mo. App. 69, 181 S. W. 1080; Volk v. Zepp, 190 S. W. 609; Weller v. Plapao Laboratories Corporation, 191 S. W. 1056, 1. c. 1060.] And see the opinion of the Kansas City Court of Appeals in Dawson v. Flintom, 190 S. W. 972.

The trial court, we think, misapprehended the effect to be given to the opinion in Keeline v. Sealy, supra. Indeed in the more recent case of Hall v. Coke & Coal Co., 260 Mo. 351, 168 S. W. 927, an instruction of this indentical character is expressly approved; the case being one wherein a conflict in the testimony existed of such character as to afford a basis for the giving of such instruction.

That there is a "sharp conflict" in the testimony in the record before us is conceded in the brief of counsel for respondent. And it is quite clear to us that the conflicting and contradictory testimony, as to material matters, is of such character as to afford a sufficient basis for the giving of the instruction in question under the rule stated above. The testimony of plaintiff is at direct variance with that of defendant's witnesses in certain material respects, and Wichman's testimony is

in part self contradictory. And these conflicts and contradictions cannot, *in toto,* reasonably be attributed to mistake, inadvertence or lapse of memory.

We think therefore that the court erred in granting a new trial upon the ground assigned.

## II.

It is quite true that the rule is that upon an appeal from an order sustaining a motion for a new trial we are not confined to the ground or grounds of the motion on which the trial court predicated its order, but may take into consideration other grounds of the motion pointed out by the respondent. And the action of the trial court should be affirmed if it appear that the granting of the new trial was proper, for a reason or reasons set up in the motion, though the trial court may have assigned an improper or insufficient reason for its action (Benjamin v. Railroad, 245 Mo. 598, 151 S. W. 91; Barr v. Hays, 172 Mo. App. 591, l. c. 598, 599, and cases cited, 155 S. W. 1095); with the qualification, however, that where the trial court, as here, has impliedly overruled an assignment in the motion that the verdict is against the weight of the evidence (See Kelly v. City of Higginsville, 185, Mo. App. 55, l. c. 58, 171 S. W. 966), we cannot affirm the ruling granting a new trial, if erroneous on the ground or grounds assigned, and not otherwise justified, by finding that the verdict is against the weight of the evidence and that for this reason the granting of the new trial was proper—as appellant's counsel appear to have assumed. To do so would require that we, an appellate court, weigh the evidence in the case, which we are without authority to do in an action at law. After verdict, it rests exclusively with the trial court, who saw the witnesses and heard them testify, to determine whether or not the verdict should be set aside as being against the weight of the evidence; and where that court has refused to set aside the verdict on that ground it is not for us to say that it ought to have determined otherwise; though we may uphold the ruling granting a new trial upon the

ground that the verdict is supported by no substantial evidence, if such be the case. [See Adam Roth Gro. Co. v. Hotel Co., 183 Mo. App. 429 l. c. 440, 166 S. W. 1125.]

## III.

It is urged, however, that the trial court erred in refusing to peremptorily direct a verdict for defendant as requested and that the order granting a new trial should be affirmed on this ground. The argument advanced in this connection proceeds upon the theory that no authority on the part of Wichman was shown whereby to make defendant liable for his act in receiving the chairs for safe-keeping. But we think that the evidence, as stated above, is sufficient to support a finding that the chairs came into the custody of the defendant corporation, and that the case made was one for the jury.

## IV.

It is further insisted that the granting of the new trial was proper for the reason that the court erred in giving an instruction for plaintiff as follows:

"You are instructed that if you believe from the evidence that the plaintiff delivered to the defendant, or its agent, for safe-keeping, three chairs, and the defendant or its agent accepted said chairs and kept them, and thereafter the plaintiff demanded the return of said chairs, and the defendant or its agent failed, or refused to return said chairs to the plaintiff, and has not delivered them to the plaintiff, then your verdict must be for the plaintiff."

It is argued that defendant was shown to have been at most a gratuitous bailee, the chairs having been accepted and stored merely as a favor to plaintiff, and that therefore defendant was responsible only for the failure to exercise, in respect to the property, that care which is taken by the most inattentive and thoughtless person with respect to his own affairs; whereas this instruction makes defendant an insurer.

In this connection it may be observed that the record before us does not show that defendant offered any

instructions other than two which were, in effect, the converse of plaintiff's instruction complained of, and which directed a verdict for defendant if the jury believed that the chairs were returned. Defendant's counsel in their brief refer to another instruction said to have been offered by defendant and refused, but it is, of course, not before us.

But, in any event, we think that it was not error to give plaintiff's instruction mentioned, under the circumstances of the case. There were no pleadings in the case. Plaintiff's statement before the justice was one in the nature of an account. Defendant filed no answer, its appearance raising the general issue. Granting that defendant was merely a gratuitous bailee, evidence going to show the bailment and defendant's refusal or failure to return the property on demand, sufficed to make out a prima-facie case for plaintiff, casting the burden upon defendant to account for the property. [See Wiser v. Chesley, 53 Mo. 547; Standard Milling Co. v. Transit Co., 122 Mo. 258, l. c. 275, 26 S. W. 704; Bockserman v. Railroad, 168 Mo. App. 168, l. c. 173.] Had plaintiff charged that the property was lost while in the possession of defendant as bailee, through the latter's negligence, a different rule would apply. [See Standard Milling Co. v. Transit Co., supra, l. c. 275, 276; Bockserman v. Railroad, supra.] And had defendant undertaken to avoid liability on the ground that the property had been lost or distroyed while in its hands under circumstances such as to exonerate defendant therefor under the law relating to the liability of a gratuitous bailee, quite a different situation would be presented. But defendant did not do this. Aside from the testimony touching the matter of Wichman's authority, defendant's evidence was all directed to an effort to show that in fact the property had been returned to plaintiff. This was the issue tried; there being no suggestion of any loss or destruction of the chairs while in the custody of the defendant or its agent.

We think that the granting of the new trial cannot be sustained on the ground that it was error to give this instruction.

We are therefore brought to the conclusion that the trial court was not warranted in setting aside the verdict and awarding the defendant a new trial. While we are reluctant to interfere where the trial court has seen fit to grant a new trial—and will not do so where the matter involves the exercise of discretion on the part of the trial judge, unless a clear abuse of such discretion appears—nevertheless, where the order granting the new trial proceeds from an erroneous conclusion of law, and is not otherwise justified, it becomes our duty to set aside the ruling, in order that the appellant may not be deprived of the benefit of the verdict rendered in his behalf through a mistaken belief on the part of the trial judge that an error of law was committed at the trial.

The order granting a new trial is reversed and the cause remanded, with directions to the circuit court to reinstate the verdict and duly enter judgment thereon. *Reynolds, P. J.,* and *Becker, J.,* concur.