GEORGIA THOMPSON, Respondent, v. PORTLAND HOTEL COMPANY and THEODORE TOURSE, Appellants.

St. Louis Court of Appeals. Opinion Filed April 4, 1922.

1. **MASTER AND SERVANT: Assault and Battery: Assault by Servant: Master' Liability: Evidence: Case for the Jury.** In an action by a waitress against a hotel company and its manager for damages for assault and battery, evidence that the manager committed the assault and battery within the scope of his employment, *held* sufficient to take the question of the liability of the hotel company to the jury.

2. ———: ———: ———: **Servant's Acts Within Scope of Employment: Master's Liability.** While the master is not responsible for an act unauthorized and not done in the furtherance of the general purposes of the master, but on the servant's own account and from external, independent, and personal motives, the master is liable for the improper manner in which the servant executes an authorized act or one done within the general scope of his employment and in the furtherance of the master's general purposes.

3. **INSTRUCTIONS: Credibility of Witnesses: Proper Instructions Given: Refusal of Others not Prejudicial Error.** Where the court gave a proper instruction on the credibility of the witnesses and the weight to be given to their testimony, the refusal of an instruc-

tion by which it was sought to tell the jury that, if they believed that any witness had sworn falsely to any material fact in issue, they were at liberty to reject or disregard the whole or any part of the testimony of such witness, was not prejudicial error.

4. EVIDENCE: Questions Calling for Conclusion of Law: Objectionable. In an action by a waitress against a hotel company and its manager for damages for assault and battery alleged to have been committed in trying to get from plaintiff money paid her by mistake, the trial court did not err in sustaining an objection to a question asked the manager as to whose money he was trying to get from plaintiff, as the question called for a conclusion of law and was clearly objectionable.

5. DAMAGES: Excessive Damages: Assault and Battery: $500 Actual and $700 Exemplary not Excessive. In an action for damages for assault and battery where plaintiff was assaulted and her arm injured, and called vile names, and as a result was confined to her bed for three days, a verdict of $500 actual damages and $700 exemplary damages was not excessive.

Appeal from the Circuit Court of the City of St.Louis.—
*Hon. J. Hugo Grimm,* Judge.

AFFIRMED.

*Geo. W. Lubke* and *Geo. W. Lubke, Jr.,* for appellant Portland Hotel Company.

(1) The trial court should have directed a verdict for this defendant. The evidence showed conclusively that the acts of the defendant Tourse complained of were not within the scope of his employment by this defendant as a matter of law. Collette v. Rebori, 107 Mo. App. 711; Grattan v. Suedmeyer, 144 Mo. App. 719; Milton v. Railway Co., 193 Mo. 46; Excelsior Products Co. v. Railroad, 263 Mo. 142; Railway Co. v. Kelly, 177 Fed. 1189; Madsuda v. Hammond, 77 Wash. 120; McDermot v. Brewing Co., 105 La. 124; Steinman v. Laundry Co., 109 Md. 62; Central Railway Co. v. Brewer, 78 Md. 394; Russell v. Insurance Co., 63 So. 644; Moore v. Cohen, 128 N. C. 345; West v. Grocer Co., 138 N. C. 166; Powell v. Fiber Co.,

150 N. C. 12; Callahan v. Hyland, 59 Ill. App. 347 (2) The instructions given for the plaintiff numbered 1 & 2 are erroneous, because not predicated on and being broader than the evidence. Stid v. Railroad, 236 Mo. 382; Gunn v. Lumber Co., 218 S. W. 852; Stumpf v. United Ry's Co., 227 S. W. 852; Ostopshook v. Cohen-Schwartz Co., 227 S. W. 642; Lord v. Delano, 188 S. W. 93; Burns v. Polar Wave I. & F. Co., 187 S. W. 145; Cases cited under Point 1. The testimony of the defendant Tourse sought to be elicited by this defendant was material. As the witness was being cross-examined leading questions were permissable. No conclusion of law is called for by the questions asked by the witness, but only a statement of fact. 40 Cyc, p. 2517, i. (4) The verdict is excessive and the result of passion and prejudice on the part of the jury against this defendant, and should be set aside. Dix v. Martin, 171 Mo. App. 266; Goetz v. Ambs, 22 Mo. 170.

*Anderson Gilbert & Wolfort* for appellant Tourse.

The court erred in refusing to give defendant's refused instruction B. If any witness swears falsely to any material point in a case the jury should be instructed that they may disregard such witness' testimony. Meyers v. City of Independance, 189 S. W. 816, 822; Hall v. Coal & Coke Company, 260 Mo. 351; Cohen v. Terminal Railway Company, 193 Mo. App. 69, 76, 77. The court erred in refusing to grant a new trial on the ground that the verdict was excessive Dix v. Martin, 171 Mo. App. 266; Mitchell v. United Rys. Co., 126 Mo. App. 1; Whitlock v. Northern Railroad Co., 59 Wash. 15; Nagle v. Cohen, 67 Atl. 419; Matson v. Matson, 105 Me. 152; Kehl v. Burgener, 157 Ill. App. 468; Rees v. Rasmussen, 5 Neb. 367; Macintosh v. Bartlett, 67 Me. 130; Zimmerman v. Northern Pac., 157 Wis. 514; Hennies v. Vogel, 87 Ill. 242.

*Holland R. Polak* and *Safford & Marsalek* for respondent.

(1) The court properly refused the instruction in the nature of a demurrer to the evidence offered by defendant Portland Hotel Company. (a) Theodore Tourse was manager of defendant's restaurant. He had authority to employ and discharge the restaurant employees and supervised the payment of their wages. In the course of an attempt to collect from plaintiff, a waitress in the restaurant, the sum of two dollars which he had authorized her to draw in excess of the amount due her, he committed the assault upon which the suit was based. His act was incident to and connected with the performance of his duties as manager of the restaurant, and was done in futherance of the master's business, and, therefore, rendered the master liable. Maniaci v. Express Co., 266 Mo. 623; Whiteaker v. Railroad, 252 Mo. 458; Garretzen v. Duenckel, 50 Mo. 104; Haehl v. Wabash R. Co. 119 Mo. 325; Blumenfeld v. Grocer Co., 206 Mo. App. 509; Hellriegel v. Dunham, 192 Mo. App. 43; Meade v. Railroad, 68 Mo. App, 97-9; Bouillon v. Gas Co., 148 Mo. App. 473; Houck v. Railroad, 116 Mo. App. 570-1; Barnes v. Railroad, 192 S. W. 1040; Avondale Mills v. Bryant, 10 Ala. App. 507; Regg v. Buckley, etc., Co., 130 N. Y. S. 172; Bergman v. Mendrickson, 106 Wis. 434; O'Connell v. Samuel, 81 Hun. 357; Levi v. Brooks, 121 Mass. 501; Bayliss v. Schwalbach Cycle Co., 38 N. Y. S. R. 492; Warren v. Dennett, 39 N. Y. Sup. 830. (b) In the course of the assault, Tourse said, referring to the two dollars he was trying to collect: "If I don't get it I have to make it good myself." "I came to get it back for the company." "I have come to get the company's money; if I don't get it I will have to take it out of my own pocket." These statements were part of the *res gestate*. They were evidence characterizing his act, and could properly be considered by the jury as showing for whom Tourse was trying to collect the money. Gieske v. Redemeyer, 224 S. W. 92; Kelly v. Railroad, 225 S. W. 133; Anderson v. Lusk, 202 S. W. 304; Strothers v. McFarland, 194 S.

W. 882; Kame v. Railroad, 259 Mo. 104. (2) Defendant Portland Hotel Company asked and the court gave instruction 8, submitting to the jury the question whether or not, at the time of the occurence mentioned in the evidence, Tourse was acting for defendant Portland Hotel Company and was authorized by said defendant to act for it, and while so acting was within the scope and terms of his employment with said company. Said defendant, having asked the judgment of the jury on said issue as a matter of fact, is now estopped from claiming that the court erred in submitting said issue to the jury. Whiteaker v. Railroad, 254 Mo. 459; Berkson v. Railway Co., 144 Mo. 211; Gayle v. Fdy. Co., 177; Mo. 427; Ellis v. Harrison, 104 Mo. 270; Jennings v. Railroad, 99 Mo. 394; Hopkins v. Modern Woodman, 94 Mo. App. 409; Deitering v. Transit Co., 109 Mo. App. 555. (3) The court properly sustained the objection by plaintiff to the question propounded to Mr. Tourse, "Whose two dollars was it that you were trying to get from Mrs. Thompson on this occasion?" (a) The question called upon the witness for a conclusion, and invaded the province of the jury. The Kendall Co. v. Bain, 46 Mo. App. 581; Muff v. Railroad, 22 Mo. App. 584; 22 C. J., p. 502. sec. 597. (b) Appellant failed to make an offer of what he expected to prove by the witness in answer to the question objected to. The matter, therefore, cannot be reviewed on appeal. Bank of Slater v. Union Station Bank, 283 Mo. 308. (4) The court instructed the jury that they were the sole judges of the credibility of the witnesses, and of the weight to be given their testimony, and that the jury could consider, in determining the credibility and weight of their testimony, the witness' character, manner on the stand, interest in the result of the trial, relation to or feeling toward the parties, the probability or improbability of his or her testimony, and all other facts and circumstances in evidence. The court did not commit error in refusing a similar instruction, asked by defendant Tourse, which stated, in addition, that they "had the right to reject or disregard" the testimony of

any witness whom they believed had willfully sworn falsely to any material fact in issue. (a) It was within the court's discretion to give or refuse said instruction. Milton v. Holtzman (App.), 216 S. W. 828, and cases cited; State v. Barnes, 274 Mo. 625. Even though the court could have given the instruction, its refusal would not constitute reversible error. Sec. 15313, R. S. 1919. (5) The verdict was not excessive. Morriss v. Railroad, 184 Mo. App. 65; Flynn v. Railroad (App), 190 S. W. 371; Wingate v. Bunton, 193 Mo. App. 470; Redd v. Railroad, 161 Mo. App. 522.

ALLEN, P. J.—The petition herein was originally in two counts. The first count set up a cause of action for damages for assault and battery alleged by plaintiff to have been committed upon her by the defendants on August 4, 1918, at the Raymond Hotel in the city of St. Louis, and for which she prayed judgment for $5000 actual damages and $5000 punitive damages. The second count alleged a cause of action for damages for slander, but was abandoned below and need not be here further noticed.

The answer of the defendant Tourse is a general denial, as is likewise that of the defendant Portland Hotel Company, except that the latter admits its corporate existence.

The trial below before the court and a jury, resulted in a verdict for plaintiff against both defendants for $500 actual damages and $700 punitive damages. From a judgment entered upon this verdict both defendants have appealed.

On and prior to August 2, 1918, plaintiff, a married woman, was employed as a waitress by the defendant Portland Hotel Company which operated a hotel at 18th and Market streets in the city of St. Louis; at which work plaintiff earned $6.60 per week. The defendant Tourse was the manager of the restaurant con-

209 M. A.—31

ducted by the defendant hotel company in connection with its hotel, and in which plaintiff worked. Plaintiff resided at the Raymond Hotel, being No. 3744 Olive street in said city.

It appears that on Friday, August 2, 1918, plaintiff left the employ of the defendant hotel company, at which time defendant Tourse, as manager of said restaurant, gave plaintiff a slip showing that $6.05 was due her; and plaintiff thereupon presented this slip to one Hendley, an employee in the office of the defendant hotel company, who paid her said sum. It is said that plaintiff had been allowed to draw two dollars from the "till" during the week, and that but $4.05 was due her when she quit her employment. However, in this connection plaintiff testified: "I didn't notice how much the slip called for when I got it; I didn't even know how much I had coming until I got home. . . . I was overpaid $2, but he made out my time, and said paid in full, and, of course, they held back two days on you when you went to work, and I didn't know any better when I got home, but what it was coming to me for my back time."

On the following Sunday afternoon, August 4, 1918, the defendant Tourse came to the Raymond Hotel where plaintiff was staying for the purpose of collecting from plaintiff the two dollars said to have been overpaid her. According to plaintiff's testimony, when Tourse came to the hotel and inquired for her, she sent word to him that she was sick and could not see him, but he insisted upon seeing her; and when she heard him ascending the steps she went to the dining room in the basement and, as she says, because she was not properly dressed, she went to the pantry and closed the door. Defendant Tourse then came into the dining room and told others present that he would wait until plaintiff came out, and subsequently went to the door of the pantry and tried to open it. Plaintiff testified that Tourse at first said that he had come to see her "about coming back to work, helping him out

because he was short of help;" that subsequently he seized her by the arm and undertook to pull her through the pantry doorway, calling her vile names and using profane and obscene language toward her; that he said to her: "You stole two dollars from the Portland Hotel Company. I came to collect it, and if I don't get it I have to make it good myself, and if you will give me a dollar I will call it square." Plaintiff further testified that Tourse grabbed two bowls sitting on a sideboard nearby, one being within the other, and, with profane language threatened to break her head therewith, saying: "Come out of there; if you don't I will kill you. If I don't get you here I will get you on the street;" that Mrs. Otstott, one of the owners of the hotel, interfered, telling Tourse that he could not thus mistreat plaintiff, because of her condition, plaintiff being pregnant, and threatened to have Tourse arrested. It appears that Tourse did not succeed in getting plaintiff out of the pantry, but plaintiff testified that he injured her arm; that she was "in a very bad condition afterwards;" that as a result of her said experience she was confined to her bed for three days, though she did not consult a doctor until shortly before the birth of her baby, which occurred in the latter part of August.

On cross-examination plaintiff testified that defendant Tourse, among other things, said: "I want that two dollars that you stole from the Portland Hotel Company; I came here to get it back for the company, and if you don't give to me I will have to make it good myself."

John Huban, fourteen years of age, a son of Mrs. Otstott, testified that when Tourse discovered that plaintiff was in the pantry, he "tried to pull her by the arm and pull her out from behind the door, and she wouldn't come." And the witness said: "Then they began to get in a hot temper and argument, and Mr. Tourse picked up a bowl and was going to hit her with it and my mother or my aunt grabbed him by

the arm and told him not to do that. . . . He called her (plaintiff) a thief and said he came to get the company's money; if he didn't get it he would have to take it out of his own pocket.''

Mrs. Seebe, a sister of Mrs. Otstott, and one of the owners of the hotel, also testified that 'Tourse picked up a glass bowl and said that he was going to hit plaintiff with it. She said that Tourse went to the pantry door and tried to open it while plaintiff tried to hold the door closed; that subsequently plaintiff ''opened the door a little bit and they talked to each other.'' This witness testified that she did not see Tourse "lay his hands'' on plaintiff, but said that Tourse had one hand on the door and she ''didn't see what he done with the other hand.''

Mrs. Otstott, called as a witness for plaintiff, testified that she heard the argument between Tourse and plaintiff, heard Tourse call plaintiff a thief, and vile names, but did not see Tourse threaten plaintiff with a glass bowl or grab plaintiff's arm. However, she testified that she was out of the room during a part of the time in question.

On redirect-examination plaintiff testified that defendant Tourse was the manager of the dining room and hotel of the defendant Portland Hotel Company; that he was the only one who gave the waitresses orders, and that she had never heard anyone else give any of the employees any instructions.

Defendant Tourse was the only witness for the defendants. He admitted that he went to the Raymond Hotel and had a controversy with plaintiff regarding the overpayment to her of two dollars. He denied that he said anything to plaintiff about returning to work, denied that he laid hands upon plaintiff in any way, denied that he grabbed her arm, and denied that he picked up a glass bowl and threatened her with it. He testified that plaintiff began cursing him as soon as he undertook to have conversation with her. Touching his mission upon this occasion, he said: ''I

went to the Raymond Hotel to see her because I had to pay this two dollars out of my pocket, and I went there to collect this two dollars that was due me. I knew the hotel would make me pay it if I didn't get it from her. On examination by counsel for the Portland Hotel Company, he said: "I was responsible for the two dollars; it was charged to me by the hotel. When I went out there no one connected with the Portland Hotel Company knew I was going, and I never mentioned it to anybody. When asked by counsel for the Portland Hotel Company, "Whose two dollars was it that you were trying to get from Mrs. Thompson on this occasion," plaintiff's counsel objected to the question as calling for a conclusion of law and invading the province of the jury, and the objection was sustained, the defendant hotel company excepting.

As to the defendant Tourse, the evidence clearly made out a case for the jury; and there is no contention to the contrary. On behalf of the defendant hotel company, however, it is earnestly contended that the trial court erred in refusing to peremptorily direct a verdict for that defendant. This argument proceeds upon the theory that the evidence conclusively shows that the acts of the defendant Tourse, of which plaintiff complains, were not within the scope of his employment by the defendant hotel company, by reason whereof the doctrine of *respondeat superior* has no application.

"The general rule is that the maxim, *respondeat*, applies when the servant, in the line of his employment about his master's business, seeks to accomplish his master's purposes and in doing so acts negligently, or willfully and maliciously, or even contrary to his orders or criminally, in some instances." [Whiteaker v. Railroad, 252 Mo. 438, l. c. 457, 160 S. W. 1009.]

In Garretzen v. Duenckle, 50 Mo. 104, our Supreme Court, through Judge Wagner, said: "The universally recognized rule is that a principal is civilly liable for the neglect, fraud, or other wrongful act of his

employment, though the principal did not authorize the specific act; but the liability is only for acts committed in the course of the agent's employment. A master is not responsible for any act or omission of his servants which is not connected with the business in which they serve him, though in general he is responsible for the manner in which they execute his orders, and for their negligence in selecting means by which the orders are to be carried out.''

And in the course of the opinion the following is quoted approvingly from Howe v. Newmark, 12 Allen 49, viz:

''In an action of tort in the nature of an action on the case, the master is not responsible if the wrong done by the servant is done without his authority, and not for the purpose of executing his orders or doing his work. So that if the servant, wholly for a purpose of his own, disregarding the objects for which he is employed, and not intending by his act to execute it, does an injury to another not within the scope of his employment, the master is not liable. But if the act be done in the execution of the authority given him by his master, and for the purpose of performing what the master has directed, the master will be responsible, whether the wrong done be occasioned by negligence or by a wanton or reckless purpose to accomplish the master's business in an unlawful manner.''

It is said that, as to the question of the master's liability for the act of the servant, the motive of the servant may be of importance in determining whose act it was, but that the tendency of the more recent cases is to attach less importance to the motive with which the act is done, and give predominance to the question as to whose business was being done and whose general purposes were being promoted. [See 2 Mechem on Agency (2 Ed.), sec. 1929; Maniaci v. Express Co., 266 Mo. 633, 182 S. W. 981.] And while the master is not responsible for an act unauthorized and not done in the furtherance of the general purposes of the mas-

ter but on the servant's own account and from external, independent and personal motives, the master is liable for the improper manner in which the servant executes an authorized act or one done within the general scope of his employment and in the furtherance of the master's general purposes. In this connection see: Shamp v. Lambert, 142 Mo. App. 567, 121 S. W. 770; Bouillon v. Laclede Gas Light Co., 148 Mo. App. 462, 129 S. W. 401; Fellhauer v. Q. O. & K. C. R. Co., 191 Mo. App. 137, 177 S. W. 795; Hellriegel v. Dunham, et al., 192 Mo. App. 43, 179 S. W. 763; Blumenfeld v. Meyer-Schmid Grocer Co., 206 Mo. App. 509, 230 S. W. 132; Maniaci v. Express Co., supra.

It would serve no useful purpose to analyze the facts of the cases in this jurisdiction cited and relied upon by the defendant hotel company, many of which are clearly distinguishable from the case before us. It may be that our courts have not always ruled with an even hand upon the question involved; and it is certain that there is much conflict of authority thereon in the cases to be found in other jurisdictions. In the instant case the evidence, we think, makes the question of the master's liability one for the jury; and it was submitted by appropriate instructions. There is evidence tending to show that the assault upon plaintiff was committed by Tourse while engaged in, and as an incident to and a part of an effort on his part to collect the money due the defendant hotel company, which, under the circumstances, may be inferred to have been within the general scope of his duties as manager of said defendant's restaurant. While there is some evidence tending to show that the two dollars said to have been overpaid plaintiff had been charged to Tourse by the hotel company, and that he was consequently endeavoring to collect money due him, this does not conclusively appear, and the evidence, as a whole, touching the matter makes it a question for the jury, we think, as to whose business was being furthered by Tourse in his dealings with plaintiff, in the course of

which the assault was committed. And the defendant hotel company may be held liable for the improper and tortious means employed by Tourse in seeking to accomplish his master's business.

We consequently rule this assignment of error against the appellant hotel company.

What we have said above disposes of the complaints made of plaintiff's instructions numbers one and two.

It is contended by defendant Tourse that the court below erred in refusing to give an instruction offered by said defendant on the credibility of the witnesses and the weight to be given to their testimony, by which it was sought to tell the jury that if they believed that any witness had sworn falsely to any material fact in issue they were at liberty to reject or disregard the whole or any part of the testimony of such witness. The court, of its own motion, gave a proper instruction on the credibility of the witnesses and the weight to be given to their testimony, without, however, embodying therein any specific direction based upon the maxim, *falsus in uno, falsus in omnibus*.

We think that prejudicial error cannot be predicated upon the refusal of the court to give the said instruction offered by this defendant. An instruction based upon the maxim, supra, is "nothing more than an affirmative declaration of the power possessed by the jury in determining the credibility of witnesses." [State v. Barnes, 274 Mo. 625, l. c. 632, 204 S. W. 269.] And, as we said in Milton v. Holtzman, 216 S. W. 828, it may be presumed that the jury will exercise that power, if the circumstances warrant it, without being specifically told that they may do so. While the giving of instructions of this character, under appropriate circumstances, has been repeatedly upheld (Eastman v. United Railways Co., 232 S. W. 725; Robert v. Rialto Building Co., 198 Mo. App. 125, 199 S. W. 428, and cases cited), it does not follow that the refusal thereof is reversible error. This question we considered at

some length in Milton v. Holtzman, supra, and we need not here pursue the matter farther.

It is contended by the appellant hotel company that the court erred in sustaining the objection to the question asked Tourse as to "whose two dollars" he was trying to get from plaintiff. But we are of the opinion that this contention is without merit. The question called for a conclusion of law, and, we think, was clearly objectionable.

Lastly it is contended by both defendants that the verdict, of $500 punitive and $700 exemplary damages, is excessive. A careful consideration of the matter, however, has led us to the conclusion that we would not be warranted in disturbing the verdict on this ground; and in view of the circumstances present we feel no disposition to do so.

It follows that the judgment should be affirmed, and it is so ordered. *Becker* and *Daues, JJ.,* concur.